W. P. CONVERSE & CO. v. W. B. SORLEY ET AL.

1. Where a note has been sued on by the payee who, pending the suit, assigns the note, the assignee may intervene and have the benefit of the proceedings and prosecute the suit to judgment ; and this he may do although defendant may have died before his purchase of the note.
2. The purchaser of a note at a sale of the assets of a bankrupt takes only such interest as the bankrupt had at the time of the act of bankruptcy, and such purchaser cannot, in the absence of fraud, claim as against a prior assignee to whom the note had been assigned as collateral security.
3. A judgment enforcing the vendor's lien rendered in the lifetime of the intestate must be presented duly authenticated to the administrator for allowance ; otherwise such judgment will be postponed in favor of others of the same class which have been so presented, allowed and approved.
4. It is the purpose of the statute to prohibit the payment of claims until the holder thereof shall swear to the justness of the same, and that they have not been paid off, etc., thereby protecting estates from fraud and imposition.
5. Therefore, neither the administrator nor the probate court has the power or authority to settle a claim not so authenticated, presented, allowed and approved, and an attempt to do so would not be valid, and no title would pass by such order or deed made to transfer land to the holder of such claim in satisfaction thereof.
6. In the case of two creditors holding liens of equal dignity, the diligence in enforcing them may give priority to one, and the failure to present within one year after the qualification of the administrator postpones such claim in favor of the claim presented within the year.
7. Suit pending at the death of intestate may be prosecuted against the administrator, and such judgment is a preferred claim over those of same class not presented.

8. But a claim for the purchase money of land when before the District Court will be allowed under the equitable powers of the court; the purchaser will not be allowed to have the land without paying for it.

9. A judgment rendered against the estate and not authenticated and presented for allowance under the statute, is postponed in favor of a judgment rendered in a suit pending at the time of the death and prosecuted against the administrator to judgment.

10. The sale to be made in proceedings against an administrator to enforce the vendor's lien should properly be made by the administrator or executor.

ERROR from Grimes. Tried below before the Hon. James R. Burnett.

On the second of September, A. D. 1863, Boulds Baker sold to James E. Williams the land mentioned in the pleadings, for the sum of fourteen thousand nine hundred dollars; of this, six thousand five hundred dollars was paid in sheep, and for the balance two notes were executed by Williams to Baker, each for the sum of four thousand dollars, the first note maturing January 1, 1864, and the second maturing January 1, 1865, both bearing ten per cent. per annum interest from date, and both holding a lien on the land sold.

On the seventh day of September, 1863, the first maturing of these notes was transferred by Baker to W. B. Sorley; and the second note was before maturity transferred by Baker to G. W. Crawford.

October 6, 1866, W. B. Sorley brought suit in the District Court of Grimes county on the note belonging to him, and the second of November, 1866, he recovered judgment by default against Williams for the amount of the note and interest, with a writ of inquiry, which was executed seventh of November, 1866, and a judgment final was, on the day last mentioned, rendered in favor of Sorley and against Williams for the sum of $5272.22, with ten per cent. interest, and foreclosure of the lien on

the land described in the pleadings and in the deed from Baker to Williams.

On the fourth day of October, A. D. 1866, one day before Sorley's suit was filed, G. W. Crawford brought suit in the District Court of Grimes county on the note belonging to him. Williams made no defense to Sorley's suit, but to the Crawford suit filed an answer. And Sorley obtained his judgment by default at the first term of the court after suit brought. On account of the crowded condition of the docket, Crawford could not force a trial, and his (Crawford's) suit was still pending when the defendant, J. E. Williams, died, in the summer or fall of 1867.

On the 30th of November, 1867, E. Tarver made application for letters of administration on the estate of J. E. Williams, deceased, which were granted to him on the 27th day of January, 1668. On the 23d of April, 1868, G. W. Crawford made E. Tarver, as administrator of the estate of James E. Williams, party to his suit. It appears from the evidence that on the 31st day of December, A. D. 1868, G. W. Crawford filed in the District Court of the United States, at Galveston, his petition for adjudication in bankruptcy; but anterior to this Crawford had transferred his note on Williams to Wm. P. Converse & Co., the plaintiffs in error, as a collateral, together with other collaterals, to secure a debt existing in favor of Converse & Co. and against Crawford.

In Crawford's schedule, rendered in the bankruptcy proceedings, is found the note and land as transferred to Converse & Co. as collateral security. Sorley, at assignee's sale, bought the right of the bankrupt Crawford to both the note and the land.

W. B. Sorley recovered his judgment during the lifetime of defendant, Williams. No sale was made under the judgment, and nothing done with it (except that he had

his judgment recorded) while Williams lived; and when Williams died and his administrator was appointed, Sorley's judgment was not authenticated and presented as a claim against the Williams estate for allowance by the administrator and approval by the court. Nevertheless, on the first day of February, 1870, Tarver presented to the county judge of Grimes county his application, recognizing the Sorley judgment as a claim against the Williams estate, and applying for an order authorizing him, the administrator, to convey the whole of the land to Sorley in satisfaction of his judgment; and on the same day the order was granted by the county judge; and subsequently, in pursuance of the order, Tarver, as administrator of Williams, made the deed to Sorley for the whole of the land; and Sorley was in possession and still held the land, claiming under this deed.

On the 29th of March, 1871, W. P. Converse & Co. filed their petition in the case of Crawford v. Williams' Administrator, setting up their ownership of the note sued on by Crawford, making Tarver, administrator of Williams, and Sorley defendants; alleging, among other things, that the judgment in favor of Sorley had never been authenticated and established against the Williams estate; that the order of the court authorizing the administrator, Tarver, to make a deed of the land to Sorley, was illegal; that by the failure of Sorley to establish his judgment against the Williams estate, as required by law, his claim was postponed; and praying that the order of the county judge and the deed made to Sorley in pursuance thereof be set aside, that judgment be rendered in their favor establishing their claim against the Williams estate, that their lien on the land be enforced and foreclosed, and that the land be ordered to be sold and the proceeds be applied to the payment of their claim, interest and costs, to the exclusion of Sorley's judgment.

Sorley answered, claiming the ownership of the note claimed by Converse & Co. under a purchase made of the assignee of Crawford in bankruptcy ; that if there ever was transfer of the note to Converse & Co. it was in fraud of the bankrupt law ; that he had obtained the land by deed from Tarver, administrator, under order of the Probate Court of Grimes county, in satisfaction of his judgment obtained in the lifetime of Williams.

Tarver, by the same attorney, defended against Converse & Co., alleging that the "Sorley judgment" was a lien upon the land when he had obtained the order to convey the land to Sorley ; that the sale to Sorley was fairly made and for the best interest of the estate.   Both Sorley and Tarver denied specifically fraud, and insisted that the transaction between them was just and fair.

At the October term, 1871, the parties waived a jury, and a judgment was rendered in favor of Converse & Co. for $7241.11, and costs ; recognizing the validity of the claim of Sorley under the judgment, but annulling the order of the probate court ordering Tarver, administrator, to convey the land to Sorley ; recognizing the claims of Sorley and Converse & Co. as of equal amount and dignity ; and ordering the sale of the land, the proceeds to be applied equally to the two parties.

Converse & Co. and defendant Sorley made motions for new trials, which were overruled ; and both parties seek to reverse the judgment below so far as appropriating any of the proceeds of the sale of the land against him.

*Boone & Goodrich,* for plaintiffs in error.—1. Converse & Co. could intervene; and being the legal and equitable owners of the note, were entitled to judgment.   (1 Texas, 87, Thompson v. Cartwright; 2 Texas, 351, Martin v. Manning ; 12 Texas, 75, Giddens v. Byer's Heirs ; 15 Texas, 25, Devine v. Martin ; 20 Texas, 162, Heard v. Lockett.)

2. The next question is as to the order of the county judge and the deed to Sorley in pursuance thereof. We think we cannot better dispose of this than by quoting the language of the learned judge before whom the case was tried below: "The order of the county court, conveying all the land to Sorley in satisfaction of his judgment, is so palpably unjust and illegal, so far as its effect is claimed to forestall plaintiffs' rights, that no further notice of it is necessary."

The third question is, how is Sorley's judgment affected by his failure to authenticate it, and present it to the administrator for allowance and the county judge for approval? We respectfully submit, that Sorley's judgment has been postponed, that the claim of Converse & Co. has priority over Sorley's judgment, and that Converse & Co. are entitled to have their debt fully discharged out of the proceeds of the sale of the land before any amount can be appropriated from proceeds of the sale of said land upon any claim against the Williams estate. Originally the two notes given for the land were of equal dignity; both held a lien upon the land, both were of the same date, and were part of the same transaction; and if their relation to each other has not been changed by the subsequent acts or conduct of the different owners, a court of equity would divide the proceeds of the sale of the land equitably between the holders and owners of the two notes. But here a positive statute intervenes and fixes the status and establishes the rights of the respective parties. Sorley's judgment, rendered in the lifetime of Williams, has never been established as a claim against Williams' estate. Sorley has relied wholly upon the recordation of his judgment to maintain its validity and class. The claim of plaintiffs in error has been established properly by suit. Williams died *pendente lite*, his administrator was made a defend-

ant, and this was all that was necessary in order to enable us to proceed to judgment, establishing our claim and preserving its status. (Art. 7, Pas. Dig., p. 97; Boone v. Roberts, 1 Texas, 159; Bennett v. Spillars, 9 Texas, 521.)

How are we to know that Sorley's judgment is a just, valid, subsisting and unpaid claim against the Williams estate? How are we to know that it was not paid in whole or part by Williams after the rendition of the judgment? Our statute provides "that every claim for money against a testator or intestate shall be presented to the executor or administrator within twelve months after the original grant of letters testamentary or of administration, or the payment thereof shall be postponed until the claims which have been presented within the twelve months, and allowed by the executor or administrator, and approved by the chief justice, or established by suit, shall have been first entirely paid. (Paschal's Digest, Article 1307, page 312.) And this refers to a judgment claim for money as well as to any other claim for money. (See Birdwell v. Kauffman, 25 Texas, 198; Paschal's Digest, Art. 14, p. 98.) Nor does it matter that this judgment was a foreclosure of a vendor's lien. We can perceive no reason why an exception should be made in favor of a lien, whether vendor's, by judgment or mortgage.

*D. D. Atchison*, for defendants in error. — 1. The first point made and relied on by Converse & Co., and earnestly argued and pressed by counsel in their brief, is that the judgment rendered in favor of W. B. Sorley in the lifetime of Williams, November 7, 1866, is a nullity, because not presented to his administrator for allowance and to the probate judge for approval. We admit it was not presented, and aver it was not necessary to do so under the circumstances. It was not a dormant judgment,

but in full force and a lien on all the property of Williams in the county of Grimes, where it was rendered and also recorded ; that from its rendition in the lifetime of Williams, November 7, 1866, until his death in October, 1867, the year and day in which to issue execution—had he been alive—had not expired ; that the stay law was in full force, and none could issue in his lifetime. (Gen. Laws 11th Leg., Sec. 1, pp. 126, 118; Scogin v. Perry, 30 Texas, 30 ; Hargrove v. De Lisle, 32 Texas, 177 ; William Craven v. Matthew J. Wilson, decided by Mr. Justice Walker at this term ; Cole v. Robertson, 6 Texas, 383 ; Hall v. McCormick, 7 Texas.) The case of Birdwell v. Kauffman, 25 Texas, 198, is wholly irrelevant. To require a judgment of the District Court, in full force and a lien upon all the property, and upon which an execution could have issued at any time but for the death of the defendant, to be presented to an inferior court is against the reason of the law, and is as absurd as it is ridiculous. But this is no longer an open question in this court, and the authorities cited fully sustain my position; they are as fully relied on to reverse the judgment of the court below on this point.

2. That the judgment rendered in favor of plaintiffs in error, October, 1871, by the court below, against Tarver, administrator—a junior judgment—is of equal dignity with that rendered in favor of Sorley, in the lifetime of Williams, in 1866. A vendor's lien is not of the dignity and standing of a judgment foreclosing a similar vendor's lien, as in the present case. The law favors the diligent. And yet such was the ruling of the court below ; and not only this error, but, further, that the judgment for any balance, in the event the proceeds were insufficient arising from the sale of the land, was not a lien on the other assets of the estate. By the very terms of the probate act (see Laws of the Twelfth Legislature,

page 170, Section 206), judgment liens have the priority.

3. The court erred in setting aside the judgment of the probate court on the petition of the administrator. The petition was sufficient to give the court jurisdiction, and the judgment was not therefore a void act, and could not be attacked and set aside collaterally. There was no fraud proven, nor was there any attempted to be shown. The very facts as presented show that there could have been none, and the first time we hear this after-thought "smacks of fraud," as counsel in their brief state, is in this court. Their pleadings show it, for therein they seek to set aside the Sorley judgment, because not presented to the administrator for allowance. And this has been their mistaken theory and blunder throughout the whole case. But, says the learned judge in the court below, "The order of the county court conveying all the land to Sorley in satisfaction of his judgment is so palpably unjust and illegal, so far as its effects is claimed to forestall plaintiffs' rights, that no further notice of it is necessary." And counsel cite this *ipse dixit* as their only authority in this court. Had the learned judge examined the papers submitted to him more thoroughly, he would have found that Mr. Sorley had bought up at Crawford's bankrupt sale this very claim of plaintiffs, and was the owner of it June, 1869. He would further have discovered that as late even as February 6, 1871, the original cause of action was still pending in the name of G. W. Crawford, and that it was continued to make parties. And he would also have learned that Converse & Co., the present plaintiffs, were not even known in this transaction, for they only appeared and filed their suit afterwards, making themselves parties, as the record shows. This court will bear in mind, and particularly note the fact, that the order of the probate court, so summarily

.and wantonly set aside as "so unjust and illegal," was rendered February 1, 1870, more than one year before we ever hear or know of the plaintiffs, Converse & Co. Had the learned judge before noted these facts—had he considered the facts presented to the probate judge, we know him too well, and favorably too, to believe for a single moment that he would have committed such an error.

OGDEN, P. J.—We think that the objection raised to the rights of Converse & Co. in the note sued on not well taken, since a *bona fide* and legal transfer to them in part payment and satisfaction of a just and subsisting debt, or .as a collateral security for said debt, made by Crawford before any act of bankruptcy by him, would vest in the transferree all the rights which Crawford might have had in and to the instrument so transferred—regardless of the fact that he might subsequently have become a bankrupt. As no question is raised in regard to the time of the transfer from Crawford to Converse & Co., it is presumed that the transfer was made a sufficient time before Crawford's bankruptcy to give plaintiffs in error a good title to the note. And if suit had previously been instituted on the instrument transferred, they, as assignees, would unquestionably have the right to come into court at any time and prosecute or defend that suit as their interest might require. There appears to have been no objection on the part of the administrator of Williams' estate to the plaintiffs in error coming in as the assignee of Crawford and prosecuting this suit to final judgment. Nor does there appear to have been any real objection to the plaintiffs in error obtaining a moneyed judgment against the estate of Williams; as it appears to have been virtually admitted that the note sued on was a just and subsisting debt against the estate of James E. Williams, .deceased.

But there were several exceptions raised by the other defendants in error to the right of Converse & Co. to come in and prosecute this suit. In the first place, W. B. Sorley, one of the defendants in error, claims to be the owner of the note sued on by virtue of his purchase of the same at a sale by Crawford's assignee in bankruptcy, and that Converse & Co. had no interest in the same, and therefore should not be permitted to prosecute this suit.

But Sorley himself proves that Crawford had transferred this note to Converse & Co. before he applied for a discharge in bankruptcy, and the assignee could not sell, nor did Sorley purchase, anything more than Crawford's interest at the time of the sale; and, therefore, as no attempt was made to cast any suspicion of fraud or unfairness upon the transfer from Crawford to Converse & Co., we think the court below did not err in coming to the conclusion that the transfer was a *bona fide* one, and conveyed to Converse & Co. full authority to prosecute this action. (See Devine v. Martin, 15 Texas, 30; Heard v. Lockett, 20 Texas, 162.)

The fact that Crawford had been discharged in bankruptcy cannot in any way affect the rights of Converse & Co. which were transferred to them in good faith before the act of bankruptcy.

It is further claimed that the plaintiff below should not have been permitted to prosecute his suit against the estate of Williams, because the claim had not been probated according to law, and presented to the administrator for an allowance, nor to the probate judge for approval. But it should be recollected that this suit was instituted long before, and was pending at the time of, the death of Williams; and Article 7, Paschal's Digest, has fully provided for such a case, and fully authorizes the prosecution of this suit against the representative. (Bennett v. Spillars, 9 Texas, 521.)

We are, therefore, clearly of the opinion that the court did not err in overruling the demurrer to plaintiff's amended petition and the exceptions to the right of Converse & Co. to prosecute their suit to judgment.

The suit was brought on a promissory note given for the purchase money of a certain specified tract of land on which the vendor's lien was specifically reserved, and the plaintiff, under the proof, was entitled to a judgment against the estate of Williams for the amount of the note and a decree foreclosing the vendor's lien, unless other equities have intervened to defeat that lien.

The defendant, W. B. Sorley, claims the land described in plaintiff's petition by virtue of a deed made in pursuance of an order of the County Court of Grimes county, which was obtained on the petition of Tarver, administrator of Williams' estate, in which petition he alleges the fact that Sorley had, during the lifetime of his intestate, Williams, obtained a judgment in the District Court for something over $5000, on a note given for the purchase money of the same tract of land which was covered by the lien of Converse & Co.; that the judgment was a valid and unpaid debt against the estate, and asked for an order authorizing him to make a deed of the land to Sorley, in full satisfaction of his judgment. It appears from the evidence and admissions of the parties, that the order of the probate court was made as prayed for in the petition of the administrator, and that the deed to W. B. Sorley was executed in conformity with the order. It further appears that W. B. Sorley obtained his judgment against James E. Williams about one year before his death, and the deed by his administrator to Sorley was made about three years after the death of said Williams. This deed purports to convey the entire tract of land upon which Converse & Co. claim to hold—by virtue of the note sued on—a vendor's lien; and if that deed to W.

B. Sorley is a valid deed, then Converse & Co. have lost their lien, and they should have had only a moneyed judgment against the estate of Williams, to be paid in the due course of administration. It is admitted by the parties hereto, that the claim of W. B. Sorley against the estate of James E. Williams was never proven up nor presented to the administrator for his allowance, nor to the chief justice or county judge for his approval, as is required by law (Article 1307, Paschal's Digest), "That every claim for money against a testator or intestate shall be presented to the administrator within twelve months after the grant of letters testamentary, or the payment thereof, shall be postponed until the claims which have been allowed within that time have been paid." And repeated decisions of this court have held that a mortgage or other lien is such a claim for money as must be presented for allowance. (Danzey v. Sweeney, 7 Texas, 625; Crosby v. Willie, 11 Texas, 94; Robertson v. Paul, 16 Texas, 475.)

This statute is positive and imperative, and cannot be avoided. (Graham v. Vining, 1 Texas, 671.)

Article 1308, Paschal's Digest, declares that "No executor or administrator shall allow any claim for money against his testator or intestate, nor shall any chief justice approve of any such allowance, unless such claim is accompanied by an affidavit in writing that the claim is just, and that all legal offsets, payments and credits known to affiant have been allowed."

This statute prescribes the only mode of establishing a moneyed demand against an estate of a deceased person, and is too plain and definite to require explanation or interpretation, and is a total prohibition against an administrator or executor, or the probate court, from recognizing or paying any claim for money until the same has been properly proven up or sworn to as the law directs.

The purpose of the statute is most manifest, to prohibit the representative of an estate from allowing or paying any claim until the holder thereof shall swear to the justness of the same, and also swear that no part had been settled or paid, and thereby protect estates from fraud and imposition. The objects and wisdom of this statute have been fully recognized and enforced by repeated decisions of this court. (Gregory v. Hughes, 20 Texas, 347; Cunningham v. Taylor, 20 Texas, 129; Hansell v. Gregg, 7 Texas, 228; Coles v. Portis, 18 Texas, 157; Fulton v. Black, 21 Texas, 423.)

It follows most clearly that as the statute is direct and mandatory, and neither the administrator nor the probate court has the power or authority to settle any such claim without authentication as prescribed by statute, any attempt to do so would be in direct violation of law, and must of necessity be void. Indeed, such a direct and palpable violation of so plain and notorious a provision of the statute by the creditor, administrator, and the court, and particularly under the circumstances surrounding this case, would raise a sufficiently strong presumption of fraud and combination to vitiate the whole transaction.

Should it be claimed that the debt of Sorley had been established by a judgment during the lifetime of the debtor, and that therefore it was not subject to the statutory regulations and restrictions, the answer is, that Article 14, Paschal's Digest, provides that such judgments shall be presented as other claims, and declares that this may be done in order to establish his debt against the estate, clearly implying that a judgment rendered against a person during his lifetime is no claim against his estate until the same has been established as other claims.

But the necessity of a presentation of a judgment for money rendered during the lifetime of the testator or in-

testate, duly authenticated for allowance and approval, has been fully considered and definitely settled in the cases of Birdwell v. Kauffman, 25 Texas, 191 ; Robertson v. Paul, 16 Texas, 472; and in Cunningham v. Taylor, 20 Texas, 129, in which it is said that "a judgment not having been presented to the administrator in the mode and within the time prescribed by law, was not legally established as a claim against the estate." And in case of a mortgage with power to sell, Justice Wheeler says, "there is the same necessity for presentation for allowance and approval, duly authenticated," and if not presented as the law requires he has no right to demand payment for his debts.

In the case at bar the judgment was nearly a year old at the death of the intestate, and there was no proof—not even the affidavit of the holder—that the claim had not been fully paid before the death of Williams; and four years had passed from the rendition of the judgment before the deed was executed, and yet not an affidavit that the debt had not been paid. It is contended by counsel for defendants in error that there are two decisions of this court in 6 and 7 Texas Reports which hold that a judgment rendered against a party during his life need not be presented to his administrator for an allowance. It may be sufficient answer to such a claim to say that both of these decisions were rendered upon the 131st Section of the District Court act, and which section has been amended and repealed by subsequent legislation. And in Birdwell v. Kauffman, 25 Texas, 191, the court says those decisions are no longer applicable to our laws.

For the reason given and upon the authorities referred to, we are of the opinion that the judgment of W. B. Sorley has never been a legally established claim against the estate of James E. Williams, and that the conveyance of the land claimed by plaintiffs in error made by the ad-

34

ministrator of Williams to said Sorley in obedience to the order of the county court was without authority of law, and conveyed no title or interest in the same; and that therefore the District Court did not err in setting aside and annulling not only the deed to W. B. Sorley, but also the order of the county court directing the execution of the deed.

But we think the court erred in its further judgment, decreeing that the land should be sold, and the proceeds equally divided between plaintiffs in error and the defendant in error, W. B. Sorley.

It is true that the claims of plaintiffs in error and the defendant in error, Sorley, were of the same grade or character, and originally evidenced by similar notes, executed by the same parties on the same day, and each being for a part of the purchase money for the same tract of land, and both notes retained the vendor's lien. But James E. Williams, the maker of both notes, has been dead four or five years, and letters of administration granted two or three years ago, and yet Sorley has failed to present his claim or judgment for an allowance and approval as the law requires. His judgment or debt will therefore have to be postponed, under the law, until those claims are paid which were presented and allowed or prosecuted within the time limited by the statute. Suit was pending on the note of plaintiffs in error at the death of Williams, the maker, which finally ended in the judgment which has been brought here by a writ of error. The plaintiffs in error in the prosecution of their claim have followed every requirement of the statute, and their judgment is entitled to the same credit and standing as though the same had been legally presented, allowed, and approved.

The judgment of W. B. Sorley, however, establishes and forecloses the vendor's lien; and, as the estate of Wil-

liams cannot properly claim the land or the proceeds thereof until the purchase money is paid (Robertson v. Paul, 16 Texas, 477), he will have the right to establish his judgment, as the law provides, as a just and subsisting debt against the estate of James E. Williams, and then be entitled to claim whatever remains of the land, or the proceeds thereof, after satisfying the judgment of plaintiffs in error.

We therefore are of the opinion that there was error in the judgment of the District Court in decreeing a sale of the land and division of the proceeds between plaintiffs in error and the defendant in error, Sorley; and for these reasons the judgment of the District Court is reversed. And this court proceeding to enter such judgment as the District Court should have rendered, it is ordered, adjudged, and decreed, that the deed made by the administrator of James E. Williams to W. B. Sorley for the land described in plaintiffs petition filed in this cause in the District Court be annulled, canceled and set aside ; and it is further ordered, that the plaintiffs in error do have and recover of and from the estate of James E. Williams the amount of the note sued on, together with interest and costs of suit, and that the vendor's lein be foreclosed on the land described in plaintiffs' petition below, and that the same be sold as under execution to satisfy this judgment ; and that if said land does not bring enough to pay and satisfy this judgment and all costs, then the balance still due and remaining unpaid shall be paid by the administrator of James E. Williams, deceased, in the due course of administration.

And it is further ordered, that should the land bring more than enough to pay off and satisfy this judgment, interest and costs, then the balance of the proceeds of the sale shall be held by said administrator to pay any balance which may be due on the original purchase of said

land, should any such claim be legally established against the estate of James E. Williams, deceased.

Reversed and rendered.

*D. D. Atchison,* for motion for rehearing.—In support of the motion filed for a rehearing in the above entitled cause, we present the following argument:

And first, we respectfully submit that the judgment rendered in the cause is clearly erroneous, and that it is quite too clear for argument that under no circumstances whatever can a judgment entered by the District Court, or the Supreme Court, or any other court, be enforced by execution in the hands of the sheriff against the property of an estate. An execution cannot issue thereon; no property of an estate can legally be disposed of except through the jurisdiction of the probate court by the administrator. The court is respectfully referred to its judgment entered in this cause, and the following authorities fully sustaining the foregoing position: Hartley's Digest, Article 1168; McMiller v. Butler, 20 Texas, 404; Chandler v. Burdett, 20 Texas, 44; Fortson v. Caldwell, 17 Texas, 629; Robertson v. Paul,. 16 Texas, 476; Boggess v. Lilly, 18 Texas, 205.

And second, we respectfully submit that under no circumstances whatever can the vendor of land be divested of his title without first having received the purchase money. That when the vendor has conveyed the land, retaining the vendor's lien for the purchase money, the superior title remains in him, and cannot vest in the vendee until the purchase money is paid, has long been the well settled and established doctrine and law of this State.

The death of the vendee no way impairs the vendor's lien, nor can his estate claim the land without first having likewise paid the purchase money. So far from a vendor being required to present his claim to the admin-

istrator, as decided in this case, the statute of limitations does not even run against his debt.    It is the duty of the representatives of the deceased vendee to pay the purchase money before the title vests in the estate, and such is likewise the long, well settled, and recognized doctrine of this court—as more fully, and as we respectfully submit conclusively, appears from the following authorities: Dunlap v. Wright, 11 Texas, 597; Robertson v. Paul, 16 Texas, 476; Ramey v. Baker, 27 Texas, 59; Caldwell v. Fraim, 32 Texas, 326, 327.

In the third place, we most respectfully submit, if the foregoing proposition be true—as we think we have clearly shown—does it then follow, that when, as in the present cause, the vendor had obtained a judgment foreclosing the lien in the District Court, and the vendee died before the same could be executed, his rights as vendor are in any manner impaired?    The point is not, as loosely stated, "that a judgment rendered in the lifetime must be presented," etc.; but it is, as stated in my brief presented to the court, that the judgment rendered in the lifetime of James E. Williams, on the —— day of November, 1866, and the execution of which was suspended, both by his death in October, 1867, less than one year from its rendition, and the stay law then in force, and up to February, 1868, was such a judgment, in full force and virtue, that was not required to be presented to the administrator; not a judgment, as the court say, about a year old—not a dormant judgment.    As we then said in our brief, the question is not an open one in this court, as will conclusively appear from the following authorities: Cole v. Robertson, 6 Texas, 367-8; Hall v. McCormick, 7 Texas, 276-7.

We respectfully submit that it is a grave error for the court to hold that these decisions are no longer law, because, as stated by your honors, that the 131st Sec-

tion, District Court act, which was repealed by the act of 1853, and the opinion of Mr. Justice Wheeler thereon, in the case of Birdwell v. Kauffman, 25 Texas, has rendered them so. Read that opinion—based on what?—on claims of the fourth class? (See Hartley's Digest, as to claims of the fourth class, Art. 1187.) The case we have is of the third class (Ib.), and clearly so. And the opinion of Judge Wheeler is only to the effect that the mode of establishing claims of the fourth class by *scire facias*, under this 131st Section, no longer existed, because repealed by the act of 1853. This is the more apparent from the decisions made since this 131st Section was repealed; and I note particularly Robertson v. Paul—my own case.

The history of that case is: Judge Wheeler, when he first read the opinion, entered the judgment reversing and dismissing the case; and being pressed immediately for a rehearing, on the ground that the purchase money had not been paid, decided as in 16 Texas, 476, 477. With this decision, we ask your honors with the very gravest emphasis, how you can insist that Judge Wheeler for a moment could have ever entertained in all his thoughts that the rigid rule now laid down by this court in this case was to be implied or deduced from his opinion in Birdwell v. Kauffman, 25 Texas, 192?

The opinion in Robertson v. Paul was delivered long after the repeal of this 131st Section; and if any such imperative rule as that all demands were to be presented as decided by this court, why did he establish the claim of Paul without its having been sworn to—not requiring, as he said, the useless formality of presentation?

And I may add the same as to the following authorities: Fortson v. Caldwell, 17 Texas, 629; Boggess v. Lilly, 18 Texas, 205; McMiller v. Butler, 20 Texas, 405; Chandler v. Burdett, 20 Texas. Paschal's Digest, Article 14,

shows the remedy not to be presentation, but certifying the judgment.

If I have not shown in the foregoing that we are entitled to a rehearing in this cause, it would be a vain thing for me to pursue it further. I assert with all boldness that my brief contains the law of this case; except in this I may be in error, that the fund, as decided by the court below, should be shared alike by the holders of the notes. But suppose Williams had not died, and there had been no suspension of the execution of Sorley, and the land had been sold and purchased by Sorley, and yet the judgment not satisfied, but a large balance due, would Sorley have been compelled to pay the other note? We think the answer to this question solves the whole matter; and referring to our printed brief as a part hereof, we most humbly petition this court not to take away our land without paying the purchase money.

*Terrell & Walker*, for plaintiffs in error.—In reply to the argument on file for rehearing, it is urged:

1. By the Constitution and statutes under it all probate jurisdiction is vested in the District Court.

The court having jurisdiction could either order sale by the administrator, or, in the cheaper mode, by the sheriff. At most, on the administrator, Tarver, claiming the right to sell, the court would remodel its mandate as to the mode of sale.

But the administrator does not complain; and Sorley being the only adversary, his rights are as safe in the hands of the sheriff as if the sale was made by Tarver, administrator.

The case of McMiller v. Butler, and the others cited by appellant, apply to sales under executions under judgment rendered prior to the death of the defendants in execution, and do not limit the power of the court in decrees against estates.

2. Converse & Co. can as well insist upon the superior rights of the vendor as can Sorley; and the more so, for his proceedings against the land bear date before Williams' death. No break is in the chain of acts prescribed by the law in enforcing the lien. Not so with Sorley; his, or rather Tarver's, proceedings in the probate court are new, unconnected by any legal (the statutory) link with the suit and judgment in the lifetime of Williams.

The controversy is not made by heirs or creditors against the rights of the unpaid vendor, but by the diligent vendor against the negligent, whose rights, equal in equity, must be determined by their standing in law under the statute.

Converse & Co. exhibit a perfect right to their judgment. Sorley, not having his judgment presented and approved within twelve months after the grant of letters of administration, is postponed in favor of Converse & Co., but is allowed to enforce his lien to the residue; and his claim is superior to that of creditors or heirs.

3. We are unable to find, save in the equity jurisdiction of the District Court, any right to enforce a money judgment, secured by the vendor's lien, or otherwise, after the death of the defendant, without first establishing the judgment, by presenting it, duty sworn to, for allowance and approval. When allowed and approved, the lien can be enforced. (Pas. Dig., Art. 1319.)

This rule is statutory and binding upon the courts. (Birdwell v. Kauffman, 25 Texas, 192.) Except in this way, the probate court, under the act of 1848, had no jurisdiction.

The probate court exceeded its jurisdiction when attempting, in favor of Sorley, to rescind the contract; and the act became a wrong when made without regard to the equal rights of Converse & Co. Nor does it require argument to ascertain that the rights of Converse & Co. are

not affected by the *ex parte* and unauthorized proceedings in the probate court; but such as they are must be determined by this suit, in which they have been so long seeking to enforce their rights.

Both these claimants are third class creditors, seeking to enforce their moneyed judgments against the same land. Sorley's attempted appropriation of the entire fund, through the probate court, may excuse, in morals, the effort by Converse & Co. to obtain a preference, leaving to Sorley the residue, and having the benefit of public sale.

The postponement visited upon the negligent creditor was held even to destroy as well the security as the debt, under the act of 1843. (2 Texas, Graham v. Vining.)

But the equitable right to enforce his lien is given by this court to Sorley. He is only postponed to plaintiffs. All the rights he can claim under Robertson v. Paul have been allowed him, as against heirs and creditors. He is not dismissed to begin by presenting anew his claim.

Converse & Co. had the right to select their mode of realizing upon their security from Crawford—were not required to go into the bankrupt court. The assignee could have redeemed the security had it been beneficial to the estate.

Sorley can only claim the note by paying Converse & Co. their debt; and we think the court presented the law of this case in its opinion heretofore delivered; and we ask that it be again rendered in final decision of this controversy.

OGDEN, P. J., *on rehearing.*—This case was decided during the early part of this term of the court, and is now before us again on a rehearing; and after a most thorough re-examination of the whole case, under the light of the able brief and argument of counsel for defendant in error,

we feel bound to adhere to the principles of law heretofore enunciated.

The material questions presented in this record have been often decided, and we think finally settled, by former decisions of this court, and we are disinclined now to disturb those decisions. In our former opinion we announced what we thought to be the legal presumptions to be drawn from the facts of the case, without any intention to reflect in any manner upon any one, and especially upon the learned counsel who presented this case before the court.

There are certain facts and circumstances presented in the record which in themselves might have been legitimate and proper, and which, considered separately, were no evidence of any improper motives in any one, but which, when combined or associated together, might raise presumptions never intended by any one, but which nevertheless might have an important bearing on the cause.

We think the facts of this case clearly warrant the legal construction expressed in our former opinion, but which we deem it unnecessary now to repeat.

The decree, however, which was entered under our former decision, will be so changed as to direct the sale of the land by the administrator, in the due course of administration, and the proceeds of the sale to be applied to the discharge or payment of the debts, as heretofore directed by the decision of this court.

AFFIRMED.