Nona M. **PIPES** and Pat Mewhinney Hennessy, Appellants,

v.

Sonja **CHRISTENSON**, Administratrix, Estate of Hubert Mewhinney, Deceased, Appellee.

No. 7735.

Court of Civil Appeals of Texas, Beaumont.

Oct. 16, 1975.

Rehearing Denied Nov. 6, 1975.

Stanley F. Swenson and Philip M. Shafer, Houston, for appellants.

James E. Faulkner, Cold Springs, for appellee.

STEPHENSON, Justice.

The appeal is from an order of the constitutional County Court of San Jacinto County denying an application to remove the administratrix of the estate of Hubert Mewhinney, deceased. We will designate the moving parties, the surviving children of the intestate deceased by a prior marriage, as Petitioners, and will refer to the surviving widow as Respondent.

Deceased died intestate on November 5, 1973, and Respondent filed her application to be appointed temporary administratrix

of his estate on November 9, 1973, alleging that the deceased left an estate of the approximate value of $2,000. The application was granted, and Respondent qualified as temporary administratrix on the same day after filing her bond in the amount of $1,000. On November 26 she was appointed permanent administratrix, the bond fixed at the sum of $1,000, and she duly qualified as permanent administratrix of the estate by filing her oath and bond shortly thereafter.

In the meanwhile, on November 14, 1973, the temporary administratrix secured possession of $1,400 in cash and certain items of personal property then in the custody of the Sheriff of San Jacinto County by virtue of an order signed by the Judge of the Probate Court of said county entered in the pending proceedings now under review.

On November 30, 1973, Respondent made demand upon a savings and loan association in Temple and received in excess of $15,000 in cash from such association, the checks being made payable to her in her capacity as administratrix. The deposits in the Temple association stood in the name of the deceased and his mother, Stella Mewhinney.

Shortly thereafter, Respondent received $11,197.10 from a savings and loan association in Arlington, Virginia, the check being made payable to her in her capacity as administratrix of the estate of her deceased husband. This sum represented a savings account in the name of James Sam Mewhinney, Jr., trustee for the intestate.

Respondent did not file any inventory and appraisement of the estate as required by Tex.Prob.Code Ann. § 250 (Supp. 1974–1975). Instead, as she testified on the removal hearing, she paid out large sums of money in discharging what she termed community debts, but no claims were filed, presented, or ordered paid, as required under Tex.Prob.Code, Chap. 8, Part 4, § 294 et seq. (1956).

On February 1, 1974, petitioner, Nona Pipes, filed an application for a new bond alleging that Respondent had come into

possession of a large sum of money and the bond in the sum of $1,000 was insufficient to protect the interests of the heirs of the deceased. Upon default by Respondent, the court entered an order on July 30, 1974, requiring Respondent to file a new bond in the amount of $37,500 within ten days after the entry of such order. The new bond was not filed within the time required by the order.

Thereafter, Mrs. Pipes, joined by another child of the deceased, filed their joint motion to remove Respondent. The surety upon the administratrix's bond, Western Surety Company, was joined as a party respondent in this proceeding. Lengthy allegations were made that Respondent, having come into possession of large sums of money, as mentioned earlier herein, had paid some of the money out in satisfaction of alleged debts, without requiring claims to be filed; that she had appropriated the money to her own use and benefit; that she had failed to file the inventory and list of claims as required by law; that she had ignored the court's prior order as to the amount of the increased bond. Further allegations were to the effect that Respondent "has misapplied or embezzled, or that she is about to misapply and embezzle" about $28,000 which had come into her possession as administratrix; that the administratrix "is insolvent, and that if Respondent [administratrix] has not already squandered and dissipated said above-mentioned sums of cash money . . . that she will squander and dissipate" the same.

At a hearing upon the motion to remove Respondent held on September 20, 1974, the trial court dismissed the surety upon the bond and announced from the bench an order denying the motion of petitioners to remove Respondent. The earlier order increasing the amount of the bond was reaffirmed, but the time within which to file such bond was extended to November 1, 1974. No formal order embodying this judgment was entered until March 25, 1975. It is from this last order denying their motion to remove Respondent that this appeal is taken.

■ Petitioners filed a lengthy brief containing twenty-seven points of error. Respondent has not favored us with any brief nor has counsel for her surety filed a reply brief. Under these circumstances, we will invoke the provisions of Tex.R.Civ.P. 419. *Crawford v. Modos,* 465 S.W.2d 220, 222 (Tex.Civ.App.—Beaumont 1971, writ dism.).

■ Our review of the record convinces us that the trial court erred in denying petitioners' motion to remove Respondent as administratrix of the estate. She could have been removed without notice under the provisions of Tex.Prob.Code Ann. § 222(a)(2) (Supp. 1974–1975), since she failed to return an inventory of the property of the estate and a list of claims within ninety days of her qualification and had neither sought nor procured an extension of time within which to do so. Having been required to give a new bond, she failed, and her removal without notice would have been authorized by § 222(a)(3) (Supp. 1974–1975).

More importantly, however, after due notice by personal service, her failure to return the inventory and list of claims and to file the new bond were shown without dispute. Thus, removal was authorized under Tex.Prob.Code Ann. § 222(b)(3) and (4) (Supp. 1974–1975). We do not deem it necessary to cite the court decisions which support removal under the instances set out. See generally M. Woodward and E. Smith, 18 Texas Practice, Probate and Decedents' Estates §§ 663 and 664 at 35–37 *et seq.* (1971), and cases therein cited.

The so-called inventory filed by Respondent on October 7, 1974, discloses that she claims to have paid out more than twenty-five thousand dollars to more than thirty different individuals and entities, and there is not a record of a single claim having been filed against the estate. There is only one receipt attached, one for $849.18 for funeral services. Several notes are shown to have been paid, but no information is given as to

the person liable thereon; $500 is said to have gone in payment of "various charge accounts (Joskes, Glove, Battlesteins, etc.). . . . Gas, oil, eats, drinks, lodging and traveling expences necessarily and reasonably incurred" by Respondent are said to have been paid in the even amount of $2,000; while one item is reproduced in its entirety: "Community Note and debt paid *by* Uncle Joe Perry paid by Administratrix $7,250.00 paid in January and February of 1974."

As to the latter item, it appears from her testimony that this sum was paid in cash with the Respondent and Uncle Joe Perry being the only witnesses to the alleged payment.

From the abbreviated record which we review, it is impossible to determine whether or not the sums received in cash constituted community or separate property of the deceased. The trial court did not conduct a meaningful inquiry into the source of these funds and the record does not permit our passing upon this facet of the case. It is obvious, however, that a large part of the estate has been placed beyond reach of the court and the heirs of the decedent—and that such as been accomplished by the Respondent without following any of the applicable provisions of the Probate Code. Thus, while Respondent claims that she has paid out over twenty-five thousand dollars in payment of claims against the estate, not a single claimant complied with the provisions of Tex.Prob. Code Ann. § 319 (1956) reading:

> "Except as provided for payment at his own risk by a guardian of an unauthenticated claim, no claim for money against the estate of a decedent or ward, or any part thereof, shall be paid until it has been approved by the court or established by the judgment of a court of competent jurisdiction."

More than a hundred years ago, our Supreme Court, in considering the predecessor statute governing presentment of claims said in *Converse & Co. v. Sorley,* 39 Tex. 515, 528 (1873):

> "It follows most clearly that as the statute is direct and mandatory, and neither the administrator nor the probate court has the power or authority to settle any such claim without authentication as prescribed by statute, any attempt to do so would be in direct violation of law, and must of necessity be void. *Indeed, such a direct and palpable violation of so plain and notorious a provision of the statute by the creditor, administrator, and the court, and particularly under the circumstances surrounding this case, would raise a sufficiently strong presumption of fraud and combination to vitiate the whole transaction."* (Emphasis supplied.)

In *Small v. Small,* 434 S.W.2d 940, 942 (Tex.Civ.App.—Waco 1968, writ ref'd n. r. e.), it was held that a claim presented without proper verification was void and the allowance by the administrator had no effect whatsoever, the whole transaction being a nullity.

■ Respondent has insisted, throughout the proceedings and even in the bob-tailed inventory which she eventually filed, that the property which she received was community property; a fact which we are unable to determine from this record and which was not established upon the hearing below. Assuming, *arguendo,* that such sums received from the savings and loan associations constituted community property, Respondent, as the surviving widow, would be entitled to three-sixths thereof after payment of all indebtedness and expenses of administration, and not five-sixths as she contended.

The judgment of the trial court is reversed, and this cause is remanded with instructions for the entry of an order:

(1) Removing Respondent as administratrix of this estate;

(2) Ordering Respondent to file a final accounting;

(3) Appointing a new administrator or administratrix;

(4) Ordering Respondent to deliver all money and property of this estate that has come into her hands to the successor administrator.

The judgment dismissing the surety upon Respondent's bond is affirmed without prejudice to any claim the successor administrator may make against Respondent and said surety.

Reversed with instructions.