## THE ROTAN GROCERY COMPANY V. J. Z. NOBLE.

### Decided May 28, 1904.

**1.—Contract of Settlement Releasing Part of Debt—Consideration.**

The payment of a part only of a liquidated sum due, at the time and place of payment on a promise of the creditor to cancel the whole claim, discharges the indebtedness to the amount of the sum paid and nothing more, if there is no consideration for the promise to discharge. The least consideration, however, in such a case is sufficient to make the agreement binding.

**2.—Same—Consideration Held Sufficient.**

The consideration was sufficient where the debtor forbore to make a general assignment for creditors in consideration of the settlement with his largest creditor, who obtained more in the settlement than he would have gotten under an assignment, and the debtor, in settlement of his running account, part of which was not then due, gave his negotiable note to a bank, due on demand and bearing a higher interest than the account, and proceeded to sell out his stock in order to pay the note.

**3.—Same—Fraud in Procuring Settlement.**

In an action by a creditor to recover the balance of a debt on the ground of fraudulent misrepresentations inducing a settlement for a less amount, the jury found in answer to special issues that the debtor represented that he was insolvent and could not pay out and contemplated making an assignment; that he stated that he owed $3300, and did owe that amount; that the actual value of his assets was $1900, and he represented that the approximate value thereof was $1250, if sold at forced sale; that he represented that he had no cash, but then had $94 in bank and was owing the bank $60; that these matters operated as some inducement to the creditor to make the settlement, but he would have made it had he been advised of the true condition of affairs. Held, that the findings of the jury did not comprehend a finding that the debtor's acts and representations had worked a fraud on the plaintiff creditor.

Appeal from the District Court of Hill. Tried below before Hon. W. Poindexter.

*A. C. Prendergast* and *A. P. McKinnon,* for appellant.

*Wear, Morrow & Smithdeal,* for appellee.

TALBOT, ASSOCIATE JUSTICE.—Appellee was indebted to appellant on open account, for goods, wares and merchandise, in the sum of $2548.40. In November, 1901, he was in failing circumstances and informed appellant of that fact. In view of appellee's statements of his financial condition and that he would be forced into bankruptcy proceedings, if he could not compromise and settle said account, appellant agreed to and did accept, in full payment and satisfaction thereof, the sum of $1500. In order to raise the money with which to pay off said account appellee executed to the First National Bank of Itasca, Texas, his negotiable promissory note in the sum of $1500, bearing interest at the rate of 10 per cent per annum and providing for the payment of attorneys' fees if sued on or placed in the hands of an attorney for collection. This note was payable on demand after its date, without grace. On the 21st day of August, 1902, appellant brought this suit to recover of appellee the balance of said account, after de-

ducting the said sum of $1500. Appellee pleaded the payment of the $1500 and acceptance thereof by appellant as an extinguishment of the entire account. To this plea appellant replied by supplemental petition, alleging in substance that appellee, in order to obtain the settlement and release set up by him, falsely and fraudulently represented to it that he was financially broke and could not pay fifty cents on the dollar of his debts; that his assets consisted of a small stock of goods and some notes and accounts much less in value than the amount of his debts, etc. That said representations were, each and all of them, false and untrue; that appellee had on hand at the time of the settlement at least $1500 in money, and that his stock of goods and notes and accounts were worth more than he had represented. That appellant believed appellee's statements were true and would not have made the settlement and accepted the $1500 in full payment of its account had it not so believed. Appellant prayed that if it was not entitled to recover on account, that it recover damages in the amount of said account.

Appellee by supplemental answer denied that any of the representations made to appellant were false or fraudulent; that at the time of the settlement with appellant his assets were insufficient to pay off his debts; that he was willing and anxious at that time to turn over to his creditors all the property he had, for the purpose of paying his debts; that to avoid the expense of proceedings in bankruptcy and believing more could be realized otherwise for his property, he consulted appellant and other creditors with a view of getting them to take his assets and relieve him from further liability on his debts; that but for the agreement made with appellant he would have made a general assignment for the benefit of all his creditors.

The case was submitted on special issues, the questions asked and answers thereto being as follows:

"(1)   At the time defendant Noble was negotiating with plaintiff company for the adjustment of settlement of his account then due plaintiff, and at the time plaintiff agreed to deduct $1000 from the face of said account, how much did defendant represent to Mr. Shear, president of plaintiff company, that he, the defendant, then owed and was indebted? Ans. He represented that he then owed about $3300.

"(2)   How much did the defendant Noble actually owe at the time plaintiff company, through its president, agreed to deduct $1000 from the face of defendant's account to plaintiff upon the payment of the remainder thereof? Ans. Defendant did owe about $3300.

"(3)   What did the defendant Noble represent to Shear, the president of plaintiff company, at the time mentioned, to be the value of the goods, notes and accounts on hand at the time? Ans. Defendant Noble represented to the plaintiff company that the approximate value of his said assets was about $1250, if sold at forced sale.

"(4)   What, in fact, was the value at said time, of defendant's stock of merchandise, notes and accounts? Ans. The actual value of his goods, notes and accounts was about $1900.

"(5)   If you have found in answer to the first and second questions that the defendant Noble did represent to the president of plaintiff company that he owed more than the actual amount of his indebtedness, then state in what the misrepresentation consisted, that is, how much more did he state that he then owed than he really did owe? Ans. Defendant Noble made no misrepresentation in regard to the amount of his indebtedness.

"(6)   If you have found that the defendant misrepresented to the president of plaintiff company the real amount of his indebtedness, then state whether such misrepresentation induced plaintiff to make said settlement and to deduct $1000 from the face of defendant's account. Ans.   Plaintiff was not induced to make a settlement on account of the representations in regard to his indebtedness.

"(7)   Would plaintiff have made said settlement with the defendant and accepted $1000 in satisfaction of plaintiff's debt if the defendant Noble had not misrepresented the amount of his indebtedness, if he did so? Ans.   Plaintiff would have made said settlement.

"(8)   If in answer to the third and fourth questions you have found that defendant Noble misrepresented the amount of his assets, that is the merchandise, notes and accounts he then owned, then state in what respect the misrepresentation consisted and whether same induced or afforded any inducement to plaintiff to make said settlement. Ans. Defendant Noble did, in some respects, misrepresent the amount of his assets, and said misrepresentation amounted to $650, and the same afforded some inducement to plaintiff to make said settlement.

"(9)   How much did defendant Noble owe the First National Bank of Itasca at the time of the settlement in question? Ans.   Defendant Noble owed the First National Bank of Itasca $60.

"(10)   How much money did defendant Noble have on deposit with the First National Bank of Itasca at the time of the settlement in question? Ans.   Defendant Noble had about $94 in the bank.

"(11)   Did the failure of the defendant Noble to disclose or make known to the plaintiff and its agents the amount of money defendant Noble then had in the First National Bank of Itasca, offer any inducement to plaintiff to make the settlement in question? Ans.   The failure of defendant Noble to make known the amount of money defendant then had in the First National Bank of Itasca did afford some inducement to plaintiff to make the settlement.

"(12)   If you have found that defendant Noble in procuring the settlement in question misrepresented to the president of plaintiff either the amount of his indebtedness or the amount of his assets, then you will state whether such misrepresentation alone, or in connection with the failure of the defendant to disclose and make known to the plaintiff the amount of money he then had on deposit in the First National Bank of Itasca, induced plaintiff to enter into said settlement and to accept $1500 in payment of said account. Would plaintiff have made said settlement if its president had been advised of the true condition of the

defendant's affairs, and if said misrepresentations and concealments had not been made, if any were made? Ans. Defendant Noble misrepresented in regard to his assets in connection with his failure to disclose the amount of money he then had on deposit in the First National Bank of Itasca, had some inducement to plaintiff to make said settlement, and plaintiff would have made said settlement if its president had been advised of the true condition of defendant's affairs.

"(13) What arrangements did defendant Noble make with the First National Bank of Itasca touching the manner and method of paying the $1500 he borrowed from said bank to pay plaintiff? Ans. Defendant Noble was to pay the $1500 borrowed to pay plaintiff, out of the proceeds of the sale of this stock of goods.

"(14) If in answer to the foregoing question you have, answered that in order to procure said $1500 defendant Noble agreed to pay said amount to the bank out of the proceeds of the sale of the stock of goods, then state whether or not the plaintiff, or its agents charged with negotiating said settlement, knew said fact at the time of said settlement, and at the time plaintiff received the $1500. Ans. Plaintiff knew said fact at the time of said settlement.

"(15) Would the defendant Noble have made a general assignment for the benefit of his creditors or taken the benefit of the bankrupt law in the event plaintiff had declined to accept the $1500 in payment of the plaintiff's claim against defendant, and did the plaintiff and its said agents know said fact? Would plaintiff have realized more or less if defendant had done this? Ans. Defendant Noble would have made an assignment for the benefit of his creditors if the plaintiff had declined to accept $1500. And plaintiff knew said fact, and plaintiff would have realized less had defendant made said assignment.

"(16) If defendant would have made a general assignment or taken the benefit of the bankrupt law in the event that plaintiff had declined to accept the $1500 in settlement of its account and claim against defendant, did this fact afford any inducement to plaintiff to accept said $1500 and make said settlement? Ans. The fact that defendant would have made an assignment afforded some inducement to plaintiff to make said settlement.

"(17) Was the plaintiff injured or benefited by said settlement? Ans. Plaintiff was benefited by said settlement.

"(18) Could plaintiff have realized more than $1500 on its account by declining to receive the $1500 of said account? Ans. Plaintiff could not have realized more than $1500 by declining to receive said amount in settlement of said account.

"(19) Was there any understanding or agreement with plaintiff at the time of settlement as to what was to be done by J. Z. Noble with reference to his stock of goods? Ans. There was an agreement as to what was to be done with the stock of goods.

"(20) If there was any understanding or agreement with plaintiff as to what was to be done with the stock of goods, what was such under-

standing or agreement? Ans. Defendant was to sell goods and pay note at bank."

In answer to special question asked by plaintiff the jury found that defendant paid his other creditors in full. Upon the foregoing findings of the jury the trial court entered judgment for appellee, from which this appeal is prosecuted.

The reasons urged for a reversal of the judgment, as shown by appellant's several assignments of error, may be summarized and stated as follows: (1) Because appellant's debt was a liquidated demand, and the payment of a part only by appellee, upon the agreement of appellant to cancel the whole, without a new consideration therefor, did not discharge the unpaid balance thereof; (2) because the appellee's special supplemental answer presented no defense to appellant's cause of action; (3) because the answers of the jury on all material issues were favorable to appellant, and the judgment must conform to their verdict; (4) because the court erred in submitting the issues involved in questions 13, 14, 15, 16 and 17 and the special issues requested by appellee which are numbered above as 19 and 20.

The rule is generally recognized that the payment of a part only of a sum due, at the time and place of payment on a promise to cancel the whole claim discharges the indebtedness to the amount of the sum paid and nothing more, if there is no consideration for the promise to discharge. The least consideration, however, in such a case is sufficient to make the agreement binding. The question then is, was there a sufficient consideration to support the agreement of appellant to release and discharge appellee from the remaining portion of the indebtedness in question, upon the payment of the $1500? We think so. Appellee was unable to pay his debts and contemplated making a general assignment for the benefit of his creditors, or taking the benefit of the bankrupt law. This was communicated to appellant and known to it at the time of the payment and acceptance by it of the $1500 in full satisfaction of its debt. Appellee would have made such assignment if appellant had declined to accept the $1500, and appellant knew that fact, and it would have realized less on its debt had appellee made the assignment. The fact that such assignment would have been made was some inducement to appellant to make the settlement. The settlement having been made with appellant, appellee was relieved of the necessity of making the assignment contemplated or of seeking relief in bankruptcy proceedings, and no further steps were taken by him in that respect. It was also understood by appellant that appellee would be compelled to borrow the money with which to make the payment under their compromise agreement and give his promissory note bearing interest therefor, and to devote his time to the selling out of his stock of goods for the purpose of paying off the note with the proceeds arising therefrom. The note was given for the money as understood, drawing a larger rate of interest than was recoverable by law on appellant's open account. Appellee sold out the goods and paid off this note as contemplated. All of appellant's

debt was not due at the time of the settlement, and payment of the $1500 was made in appellee's negotiable check on the First National Bank of Itasca, Texas, for that amount. Looking to these facts we think it clear that there was ample consideration to uphold the agreement on the part of appellant to relinquish the unpaid balance of his account against appellee.

The general rule stated and the reason therefor seems technical and unjust, and should be limited in its application to the precise import thereof. Kinckley v. Arey, 27 Me., 362; Harper v. Graham, 20 Ohio, 106; Brooks v. White, 37 Am. Dec., 95; Dawson v. Beall, 68 Ga., 326. The special answer of appellee set up the facts relied on by him to relieve the case from the operation of the general rule above mentioned, and the issues involved in questions 13, 14, 15, 16, 17, 19 and 20 submitted and complained of, called for a finding of the jury upon those facts; and it follows therefore, from what has been said, that there was no error in the action of the court in overruling appellant's exception to said answer and in submitting said issues. The next question which arises is: Does the evidence and findings of the jury establish such misrepresentations or acts of fraud on the part of appellee, as an inducement to the settlement and acceptance of the $1500 by appellant in full satisfaction of his claim, as authorized or required the entry of a judgment for appellant? We think not. The jury found that appellee represented that he owed $3300 and that he did owe that amount. They find that the actual value of his assets was $1900, and that he represented to appellant "that the approximate value of his said assets was about $1250, if sold at forced sale." It is claimed that he represented that he had no money and the jury finds upon that issue that he had $94 in the bank, but that he owed $60 of that amount to the bank; these were the only issues involving the element of fraud submitted or arising on the evidence. The representation as to the value of his assets was merely an estimate and the expression of his opinion. The slight inaccuracy in regard to the amount of cash he had on hand could not reasonably furnish a basis for setting aside the settlement made and authorize a judgment against appellee for the amount claimed. It is true the jury found that these matters operated as some inducement to appellant to make the settlement, but they also find that appellant would have made the settlement had its president been advised of the true condition of appellee's affairs. The jury was not requested in writing to find, nor did they find, that any representation made by appellee was fraudulently made for the purpose of procuring the settlement; and the conclusion of the jury does not comprehend a finding that appellee's acts worked a fraud upon appellant.

By the act of the Legislature passed in 1897 (Acts Special Session, p. 15) amending article 1331 of the Revised Statutes of 1895, relating to the submission of causes on special issues, it is provided that "the failure to submit any issue shall not be deemed a ground for reversal of the judgment upon appeal or writ of error unless its submission has been requested in writing by the party complaining of the judgment; and

that upon appeal an issue not submitted and not requested by a party to the cause shall be deemed as found by the court in such manner as to support the judgment, provided there be evidence to support such finding." Southern C. Oil Co. v. Wallace, 23 Texas Civ. App., 12, 54 S. W. Rep., 638; Cahill v. Dickson, 1 Texas Law Journal, 861, 77 S. W. Rep., 281.

The rule that the judgment of the court must conform to the verdict of the jury is not questioned; but it is believed no violence has been done that rule in this case. Under the evidence and findings of the jury the proper judgment has been rendered.

The record showing no reversible error, the judgment is affirmed.

*Affirmed.*

Writ of error refused.