### S. A. PACE GROCERY CO. v. GUYNES.
#### (No. 1943.)

(Court of Civil Appeals of Texas. Texarkana. June 27, 1918. Rehearing Denied June 29, 1918.)

1. ACCORD AND SATISFACTION ⬤⇒5 — AGREEMENTS—"CONSIDERATION."

While consideration is essential to an accord and satisfaction. slight modification of status of parties is sufficient.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Consideration.]

2. ACCORD AND SATISFACTION ⬤⇒8(1) — CONTRACTS—"CONSIDERATION"—ENFORCEMENT.

Where maker of note was solvent, an unperformed promise by payee to accept a lesser sum as full payment was without consideration.

3. ACCORD AND SATISFACTION ⬤⇒8(1) — CONTRACTS — EXPENSE OF NEGOTIATING LOANS AS "CONSIDERATION."

Where solvent maker of note, not having sufficient funds for payment borrowed the money, the expense being no greater to borrow only part than to borrow all, such expense was not consideration for agreement to accept a part of debt in full payment.

4. APPEAL AND ERROR ⬤⇒1060(3) — MISCONDUCT OF COUNSEL—STATEMENTS TO JURY—EFFECT.

Inflammatory statements to the jury by defendant's counsel regarding the tyranny of plaintiff's manager, unwarranted by evidence, permitted over objection, held prejudicial error.

Appeal from District Court, Navarro County; H. B. Daviss, Judge.

Suit by the S. A. Pace Grocery Company against J. T. Guynes. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Dexter Hamilton and R. S. Neblett, both of Corsicana, for appellant. Callicutt & Johnson, of Corsicana, for appellee.

---

HODGES, J. The appellant is a private mercantile corporation doing business in the city of Corsicana, Tex. It instituted this suit in the court below against the appellee to recover a balance of $583.60 due on a promissory note and $125.90 due on an open account. It also asked for the foreclosure of a chattel mortgage on some personal property given to secure the payment of the note. Among other defenses the appellee pleaded payment, and also asked for judgment against the appellant for an excess of $400.44 which he claims to have paid on other indebtedness held by the appellant. He alleged, in substance, that in December, 1915, he owed the appellant a balance on the note here sued on and another note for the sum of $2,500 due the 1st day of January thereafter; that the appellant, through its general manager, S. A. Pace, offered to accept in payment of the latter note $1,000 less than its face value; that this offer was assented to by the appellee, and he began making an effort to borrow the money for that purpose. He finally succeeded in securing a loan and paid to the appellant $2,425, which he alleged amounted to $400.44 more than he owed the appellant at that time if he had been given credit for the $1,000 deduction promised by Pace. In reply to this plea of payment the appellant alleged that the offer referred to, if made, was withdrawn before it was complied with, and, further, that it was wholly gratuitous and without any consideration. In a supplemental answer the appellee set out certain expenditures which he made in his efforts to secure a loan of the money needed, consisting of the costs of procuring abstracts, the examination of title, and the purchase of other interests in a tract of land he was required to mortgage as security. A trial before a jury resulted in a verdict and judgment against the appellant on its demand, and in favor of the appellee for a balance of $388.44.

In view of the disposition which we think should be made of the case, we shall consider first those assignments of error which may be regarded as attacking the sufficiency of the evidence to support the judgment rendered. It was shown in the trial below that the note sued on by the appellant was executed by the appellee in January, 1915. It was originally for the sum of $687, due October 1st after date, and provided for interest at the rate of 10 per cent. per annum and 10 per cent. as attorney's fees in the event the note was placed for collection. When introduced in evidence on the trial, it showed credits amounting in the aggregate to $352.-34. There was no dispute in the trial as to the correctness of those credits. On January 16, 1915, the appellee executed and delivered to the appellant another note for the principal sum of $2,500 due January 1, 1916, with interest from date at the rate of 10 per cent. per annum, and also provided for 10 per cent. attorney's fees in the usual form. This last-mentioned note was secured by a mortgage on real estate. During the year 1915 the appellee contracted other debts to the appellant for goods purchased on account. These debts, however, were settled before this controversy arose. In the fall of 1915, some time after the note first described matured, the appellee made a payment of $250 which he directed to be credited on that note. S. A. Pace, the appellant's manager, insisted that the credit should be applied in payment of the interest on the $2,500 note, and testified that this was agreed to, but that testimony was disputed by the appellee, and the verdict of the jury is such that it cannot be determined how that issue of fact was settled. It appears that some ill feeling was engendered during the dispute, which caused Pace, who had exclusive management and control of the S. A. Pace Grocery Company, to resolve to discontinue further business dealings with the appellee. A short time thereafter, and before the larger note matured, Pace wrote the appellee a letter offering to accept in full payment of the $2,500 note $1,000 less than its face value. Omitting the immaterial portions, that letter is as follows:

"You owe me a note for twenty-five hundred dollars, secured by a mortgage on land. You owe a prior mortgage of four hundred dollars to Mrs. Baum on this land. Some time ago you had this matter up with Capt. Allyn, and he agreed to take up this four hundred dollars, and it has occurred to me that possibly, if he is a personal friend of yours, and has confidence in you, that he would be willing to take up ours also, and if you can do this, or have some one else take it up, I will allow you to do so and will receipt the note for $1,500.00. Or, in other words, to get clear of this matter without any further friction between us, I am willing to accept fifteen hundred dollars for the twenty-five hundred dollars, and then there will be no trouble whatever for you to get sufficient money on the four hundred dollars to pay off the mortgage on your live stock. Or, if you want to do so, as I understand that you have twenty-five or thirty head of good cattle that are worth a great deal more as stock cattle than this note amounts to, I will take a new note for the amount of the balance due on the old one, and take a mortgage on the cattle and renew it until next fall. Then that will leave everything that you have clear, and you can make your arrangements for groceries with some one else.

"Now, think of this please, and make an effort to do as I have suggested. I am sure that you can do it with just a little assistance from those near you, whom I believe would be glad to assist you.

"Trusting that you will appreciate my motive in writing to you as I do, and be assured that I do it with the very best of personal feelings towards you, I remain, Yours truly, S. A. Pace, Prest. & Mgr. S. A. Pace Gro. Co."

Appellee testified that within a day or two after receiving this letter he called on Pace, expressed his appreciation of the generosity extended, and accepted the offer. Being without the necessary funds, he immediately began efforts to secure a loan, and made an application through a local agent of a foreign money lending company for $3,500, intend-

ing to use the excess over what was required to meet the offer of the appellant in payment of debts due other parties. On January 24, 1916, no payment having been made by the appellee, Pace wrote him another letter, of which the following are the material portions:

"Dear Sir: In making you the proposition some time ago that I did as an inducement to have you pay what you owed me, I did not mean, and do not think you understood it so, that the proposition should stand open indefinitely. * * * If I do not hear from you promptly on receipt of this letter, and you do not do what I want you to do, then this is notice to you now that I withdraw my proposition, and you will have to come in and make some other satisfactory arrangement with me."

Appellee testified that upon receipt of this letter he again called on Pace; and the following is his version of the conversation that took place:

"I told him that the reason I hadn't been in there in the last three or four days * * * I couldn't get the money there by the 20th, and I was tired of telling him what I was doing. And Mr. Pace said, 'You understand, Tally, that proposition was not made to stand open indefinitely.' And I said, 'I understand that.' And then he said, 'However, I will do what is right.' I told him I would get the money as soon as I could; I couldn't do anything, only wait on the other parties. Mr. Pace did not tell me on that occasion that he was going to insist on withdrawing that proposition. The first notice I received that he expected not to stand by the proposition he had made was this letter."

The letter referred to evidently was one written on or about the 7th of February following. On that date the local agent of the Central Life Assurance Company of Iowa, from whom the appellee was borrowing the money, received a check for the full amount applied for. Under the directions of the appellee the agent sent the appellant a check for $2,425, without any explanation or instruction as to how it should be applied. The remainder of the $3,500 was paid through this agent on other obligations and a small balance delivered to appellee. On February 10, 1916, the appellee wrote Pace the following letter:

"Dear Sir: In reply to yours of the 7th, I am very busy getting prepared to commence farming, but will come to see you as soon as I can. I have neglected all my farm work until this week. Respectfully, J. T. Guynes.

"I acknowledge receipt of the $2,500.00 note."

On March 9th he wrote Pace the following:

"Dear Sir: In reply to yours of recent date will say I have mortgaged nothing to any one this year, except the land to the loan company for the money I paid you."

This correspondence indicates what is shown by other evidence, that Pace was pressing the appellee for the payment of the note sued on. While the appellee must have been apprised of the fact that Pace had not allowed him a credit of $1,000, but had applied the entire payment on the $2,500 note, yet he not only failed to then make any objection, but apparently acquiesced in the ap-

plication made until about May 12, 1916. He testified that on that date he called upon an attorney to consult him about the demands that Pace was making upon him for the payment of the note sued on and other indebtedness. It appears that the attorney prepared a lengthy communication to be sent to Pace, in which are recited the agreement made by Pace to accept a part of the $2,500 note in full payment and the different transactions which had occurred thereafter during the preceding five or six months, together with the payment of the excess which he had received over the appellee's indebtedness after deducting the credit of $1,000. This letter was copied by the appellee and mailed to Pace. Upon the trial he testified that it was written in that form as a means of getting the facts therein stated before the jury. That letter seems to have been the first intimation he gave to Pace that he was insisting on the benefit of the $1,000 credit. According to the testimony of Pace, that offer had been withdrawn some time previous to the payment of the note, because of the appellee's delay; and the appellee had acquiesced in that withdrawal.

[1] The question presented is: Was the appellee at the time this suit was filed entitled to the benefits of the agreement which he says was entered into between him and Pace by which the latter offered to accept as payment in full of the $2,500 note $1,000 less than its face value? In an old English decision known as Pennel's Case, 5 Coke, 117a, it was held that the payment of a part of a debt under a gratuitous agreement that it should satisfy the whole did not bar a suit by the creditor to recover the balance. That decision has been followed in this country, but with some reluctance. The doctrine announced is often criticized as harsh and out of harmony with the trend of modern jurisprudence. See the cases collected in 1 Corpus Juris, p. 539 et seq. While in this state the presence of a consideration is regarded as essential to the finality of such settlements, the courts are liberal in treating as sufficient even slight modifications of the status of the parties resulting from the terms of such agreements. Rotan Gro. Co. v. Noble, 36 Tex. Civ. App. 226, 81 S. W. 586; Powers v. Harris, 42 Tex. Civ. App. 250, 94 S. W. 136; Bergman Produce Co. v. Brown, 172 S. W. 554. But this is not a case where the creditor is seeking the recovery of a balance claimed upon a debt which he had agreed might be satisfied by payment of a part. Here the debtor is insisting that he be allowed a credit upon the ground that the creditor should be compelled to perform his agreement to accept a part in payment of the whole debt. The questions attending the legal effect of an implied release resulting from an acceptance of only a part tendered in satisfaction of the entire debt are not involved. The situation would not be materially different if the $2,500 note had been

the only claim held by the appellant, and this were a suit by the appellee to recover the excess over $1,500 which he had paid upon it. Whatever the agreement between Pace and the appellee may have been, it is made clear by the evidence that Pace did not accept the payment of $1,500 as satisfaction of that note. If the excess over $1,500 included in the check sent to Pace had been placed to the appellee's credit, it would have been more than sufficient to extinguish all of his indebtedness to the appellant. The fact that for three months after sending that check appellee made no protest, although he knew how it had been applied, is strong evidence that he did not expect a different application of the money. If he is now entitled to the relief which he sought and obtained in the court below, it must be upon the ground that the agreement made by Pace to deduct the $1,000 was an enforceable contract.

[2, 3] Assuming that the offer had not been withdrawn, it was wholly without any consideration. The original debt was a liquidated demand about which there was no dispute. The debtor was neither insolvent nor embarrassed. The note was secured by a mortgage whose sufficiency is not questioned. While the debtor was compelled to borrow the money, he had ample property to enable him to secure enough to pay all of his debts. In addition to the incumbered property, he owned a homestead worth several thousand dollars. By his promise to pay $1,500 in satisfaction of a debt of $2,500 no benefit in any form accrued to the appellant. Neither did any detriment result to the appellee. The comparatively small expense incurred in furnishing the security for the loan constituted no consideration. At the time the offer was made he was under an obligation to pay $2,500. If he did not have the funds with which to meet that obligation, it was his duty to borrow them. Surely it was no more difficult or expensive to borrow $1,000 less than the original debt. In the agreement with Pace the appellee had not obligated himself to borrow the money in the manner he did. All Pace then asked for was payment, and it was of no concern to him how the money was obtained. The plan adopted by the appellee was one of his own selection, and the expense it entailed must be treated as having been voluntarily incurred. Harrison v. Henderson, 67 Kan. 194, 72 Pac. 875, 62 L. R. A. 760, 100 Am. St. Rep. 386, and notes page 440; 1 R. C. L. p. 193. The presence of a consideration to support a contract must be tested by what the parties have done or have bound themselves to do when the agreement is completed. If at that stage of the negotiations there is no consideration for the unperformed promise, no benefit to the promisor or detriment to the promisee, it is nudum pactum. When Pace made his offer and appellee accepted it, and thus ended their negotiations, the transaction had none of the elements of a valuable consider-

ation, and was not then an enforceable contract. It could not thereafter be transformed into one by the doing of something which the appellee was equally obliged to do by the terms of his original contract. We are therefore of the opinion that the verdict of the jury was without support in the evidence. The court should have disregarded the defense of payment and required the jury to find only the amount still due upon the note and account sued on. That matter is involved in some doubt by reason of the conflict in the evidence relating to the application of a payment of $250.

[4] We feel constrained to also call attention to what we regard as a grievous error committed in the argument before the jury. According to the bill of exception presented, counsel for the appellee used the following language:

"I'd rather work for 15 cents a day and be independent than to be the lackey of such a tyrant as S. A. Pace and draw a handsome salary, and crawl and bow down to him and do his bidding as he makes these youngsters do (referring to the witnesses Benson and Robinson), and I am responsible any time for what I say. The Czar of Russia and the commander of the German army is not as great a tyrant as S. A. Pace. He allows no one to dispute his will, and the man who does not bow and scrape before him and disputes his will and authority is in danger of his mighty wrath. Get down on your knees, sir, and let me put my foot on your neck, or you'll be hung quicker than the Czar of Russia would hang you. That's the attitude of S. A. Pace towards the employés and customers of S. A. Pace, the tyrant of S. A. Pace Grocery Company, who measures all men by the eagle on the dollar."

There is nothing in the evidence brought to this court which warranted such an inflammatory speech. It was well calculated to, and doubtless did, influence the jury in resolving important issues of fact against the appellant. Evidently such a result was expected by the attorney who used it, and he would have failed of his purpose had he not succeeded in arousing in the minds of the jurors a personal antipathy towards Pace. Every litigant, whether he be morally good or bad, is entitled, in a court of justice, to have his rights passed upon and his evidence weighed by an unprejudiced tribunal. Bias improperly created during the progress of a trial is as hurtful as that which lurks in the minds of jurors before being impaneled. The duty of the presiding judge to see that illegitimate methods are not resorted to in his presence to arouse personal bias against one of the parties to the suit is an important judicial function, and its timely exercise not only often avoids the necessity of granting a new trial in order to prevent a miscarriage of justice, but maintains the dignity of judicial proceedings. Jurors are disposed to regard as proper any argument which the court permits the attorneys to address to them, and this impression is made stronger when he refuses to sustain an objection by the opposing party. Whatever may be the technical rules regarding procedure, this court is not

disposed to sanction a verdict which we have good reason to believe was induced by an improper argument.

For the reasons stated, the judgment is reversed, and the cause remanded.

