Hemphill, C. J.
This suit was brought on a note of hand against one Joseph H. Boone, by E. G. Roberts, the appellee in this court. In the progress of the suit after issue joined, but before the trial of the cause, the defendant departed this life. The death being suggested on the record, it was “ ordered that a scire facias issue to his representatives,” which was done; and by which the sheriff was commanded to summon Joseph II. Boone, administrator of J. H. Boone, deceased, to appear at the district court, to be holden for the county of Eort Bend at its next term, “toshow cause, if any he had, why he should not be made a party defendant in the suit of E. G. Roberts v. J. H. Boone, now depending in said court,” etc. The administrator in conformity with this summons in scire facias appeared at the next term of the court, and on his affidavit, the cause was continued. At the next session of the court, the defendant, assigned the following causes of exception to the scire facias:
*(106) 1st. It is not allowed by law.
2d. If allowed, it is defective in not. averring distinctly the cause of action, and a demand.
The defendant moved for a new trial on the ground that interest was computed at a legal rate; but the disposition of the motion is not shown by the record.
The exceptions taken should have been filed before the defendant appeared and had the case continued on his motion and affidavit; but waiving all discussion of the legal effects of this irregular procedure, let us consider the questions raised by the appellant, and which have been supported by his counsel, in an argument of great ability and research.
It is insisted, first, that it is not a good writ of scire facias, because it does not, in form, conform to the law; that the form used is that of an ordinary citation; whereas it should set out all the facts that are necessary to show a right in the plaintiff to the relief prayed for; that sci/re facias is an action, and may be pleaded to as an action; that the writ being of common law origin, it must possess the form and properties by which it is characterized under that system of law.
That the procedure known to the common and statute laws of England, by the descriptive terms of sci/re facias, is an action when employed for certain purposes, and when used for other purposes, partakes of' the quality of both a writ and an action, but has rather more the nature of an action, is beyond question. When sued out to repeal letters patent, or against bail on their recognizance, it is an action; when used for the purpose of reviving a judgment, on which execution has not issued for twelve months after its rendition, it possesses more of the properties of an action than a writ; and in all cases where it requires or admits of a plea, it is in law accounted to be in the nature of an action, and should then contain-all the allegations and recitals of previous proceedings necessary to show the plaintiff’s right, and that he is entitled to all the judgment or relief prayed for in the action. See Tidd & Sellon’s Practice; 2 Wils. 251; 1 D. & E. 267.
But, although these propositions are undeniable, yet it is believed that, from an examination of our statutes on the subject of abatement of suits, it will be seen that the processes called scire facias, in those statutes, are not actions; that it was not intended that they should be pleaded to; and that even as writs, they are employed to accomplish purposes to which they have never been applied by the common or statute laws of England; and that instead of applying to these laws for the form and substance of the writs, we should *(107) resort to our own statutes, and from the words, the context and the object, ascertain the intention of the legislature; and this, once ascertained, must govern and control the decision on the questions which have been raised.
The laws of England have made no provision for a writ of scire facias, in a case like the one now under consideration. Where a party dies before interlocutory judgment, the suit abates. At common law, the suit was abated by the death of either party before final j udgment. By the statute 17th Charles II. and 8 & 9 William III., aj remedy was applied and the abatement prevented in all cases of death after interlocutory judgment, but not before.
In the scire facias, given by the statute of William III., where the death takes place between interlocutory and final judgment, the defendant is commanded to show cause why damages m the said action should not be assessed and recovered by the plaintiff.
The proceedings afterwards, throughout the suit, are upon the scire facias, whether judgment be rendered thereon by default; or if the defendant appear, a declaration is filed and an issue joined; but still the whole proceedings have reference to the scire facias. What might have been the form, requisites and properties of a writ of scire facias, if given before interlocutory judgment, is left to conjecture, as the case has not yet been provided for; and the qualities of the remedy, whether it should operate merely as a summons or be the commencement of a new proceeding, is entirely within the disposal of the legislative authority.
Let us examine the provisions of our statutes to prevent abatements in suits, and ascertain if possible whether by use of the term scire facias, in our laws, it was designed that a new proceeding should be commenced, to which the party summoned might plead; or whether it was not the sole object to preserve life and animation in the old suit, by bringing in a party who should occupy the precise position of the decedent, to the time of his death, and be able to urge the same grounds of prosecution and defense that the decedent could, and no other; and that the suit instead of abating might progress regularly to judgment, and the final decree be entered for or against the representative of the party deceased. The first statutory regulation on the subject is to be found in the 18th section of the act to establish the supreme court, etc., l.Laws of Texas, p. 79; and it is there declared “ that where any person, plaintiff or defendant, in any suit pending in any court, shall be dead, it shall be lawful for the clerk of the said court; during the recess of the court upon application, to issue proper process, to enable the court to proceed to a final *(108) judgment in the names of the representatives of such deceased person.”
What may be the appropriate process is here left to the discretion of the court or the clerk. Row, in the reason of the thing, a simple citation requiring the representative of the deceased party to appear and prosecute or defend the appeal, as the case may be, will as effectually enable the court to proceed to final judgment, for or.against the representatives of the deceased person, as could be done by a technical writ of scire facias with all its formal recitals, or if even every word and syllable in the transcript was recapitulated, and the proceedings on the appeal, to the death of the party, fully stated. The object is, to continue an appeal already commenced, all the proceedings in which can be ascertained by reference to the record, and that the judgment of the court on the appeal may be rendered for and against persons actually in existence at the time being. The uniform construction by the supreme court, of this and similar provisions of subsequent statutes, has been that the appropriate process was a summons to the representative of the deceased; and although theso processes have been denominated sci/re facias, yet they are in form, but simple mandates, commanding the party to appear and prosecute, or as the case may be, defend the appeal.
In the act respecting the abatement of suits, 3 Laws of Texas, p. 46, we find a general provision on the subject, expressed in the following terms, viz.: “That when any party may die, pending any suit in any of the courts of the republic, the suit shall not thereby abate, but upon the death being; suggested upon the docket, it shall and may be lawful to issue a scire facias, returnable to the next term of the court, which being served upon the executor, administrator, guardian, curator or heir, they shall be made parties to the suit.”
This act was passed previous to the introduction of the common law, but it will not be material to inquire whether the writ provided •for, being denominated ■ scire facias, should, from its title alone, be construed to possess all the incidents and properties of the common law writ of the same name; as, under this statute, it has functions and attributes derived from the statute alone, and effects purposes to which it has not been applied by the laws of England, either common or statute. The object of the statute is to prevent the suit from abating by the death of the plaintiff or defendant; and to effect this, a writ denominated a scire facias is directed to be issued, alike to the representatives of either party; and by its service, they are alike made parties to the suit. In England, in cases where the writ of scire facias is allowed, it is directed to the defendant or his representa *(109) tives alone; here it is served, as well on the representatives of the plaintiff as of the defendant. The one, after reciting the declaration of the plaintiff and the interlocutory j udgment, calls on the defendant to show cause why the said damages, assessed in the said action, should not he recovered by the plaintiff, according to the form of the statute. In the other, the representatives of both plaintiff and defendant are made parties, by the service of the process, and by this statute they are not required to show any cause at all, why anything should or should not be done in either the prosecution or the defense, as they are made parties by the service of the writ; and where no direction by the statute is given, they might be required to show cause why they should not be made parties, as was the order in the scire facias in this cause. "When once made parties they have the same powers, rights and grounds of prosecution and defense, as the original parties themselves in life possessed; or if still alive, could exercise or claim.
If it be contended that the scire facias allowed by this statute is the common law writ of that name, and that it must be endowed with its properties, to what portion of that law shall we look for the form, substance and essential recitals of the writ, when issued to make the representatives of a deceased plaintiff parties to the suit? Is it also, when used for that purpose, an action? and does the defendant become the actor, and carry on proceedings against the plaintiff’s representatives?
Such a writ, used for such a purpose, is altogether unknown to the laws of England.
The congress of the republic, however, had full power to give a process by which the representatives of the deceased plaintiff might be brought in and required to carry on the prosecution; and they had the like authority to call such a writ scire facias, or by any other name. The appellation could give neither form nor substantial qualities to the writ in contradistinction to the functions imparted to it by statute. It will hardly be insisted that the scire facias issued to bring in the representatives of the plaintiff should contain a recital of the defendant’s answer and of the proceedings in the suit; yet, if this be the common law writ of that name, one of its characteristics is the recital of the pleadings and proceedings, up to the death of the party, for or against whose representatives the writ has been issued. It is altogether unreasonable that such a burthen should be imposed on the defendant or officers of the court. Why then should it be required, when the writ is used to bring in the representatives of the defendant? In both instances and for both purposes the writ is called scire facias; in both, its object is simply to make *(110) parties to the suit, already instituted. JSTo new proceeding is to he commenced; for, when the parties are brought in, the writ has discharged its function, and is never afterwards alluded to in the further prosecution of the suit; the action is continued without interruption and the final decree is entered against persons actually in existence at the time of the rendition of judgment.
That the writs given by this statute were in the nature of ordinary citations by which parties are summoned into court has been the uniform construction of the law by all the courts of the country. As a rule of practice this is too well established to be disturbed on slight grounds, or unless it is manifestly contrary to law.
The writ of scire facias was issued in this case prior to the passage of the late law of the legislature to regulate proceedings in the district courts, 1 Laws of Legislature, p. 383, but we will refer to this to show that from the first law respecting abatement in suits, to this period, our legislation on the subject has been uniform; that the terms of scire facias are used in a sense and for a purpose peculiar to our own laws; and that the object, in every instance, has been to make parties to the suit already instituted, and not the commencement of a new action or of any proceeding which would require or authorize a new answer or pleadings to be filed. In the 38th section of the law referred to, the clerk is required, “ upon the petition of the defendant, his agent or attorney, to issue a scire facias, which shall be served upon the legal representative of such deceased plaintiff, requiring him to appear and prosecute said suit; ” and the same writ is ordered to issue to the legal representative of the defendant, and upon the return thereof executed, such representative shall be made a party to such suit and the same shall proceed against him. To preserve in continued existence and sustain the vitality of the suit already instituted is the exclusive object. The representative of the defendant is made a party and the suit (not a new suit, but the one already commenced) is directed to proceed against him. This being the object, the more simple the process adopted for this purpose the more would it accord with the intention of the legislature.
The subject has not been without its perplexities arising from the use of terms in a sense and for purposes different from their ordinary signification. A summons or citation would have been a more appropriate phrase. That is the term and process used under the laws of Louisiana, and by its agency suits are prevented from abating as effectually as they can be by common law scire facias, with all its form and recitals.
Upon considering provisions of law in relation to the writs, of scire *(111) facias to prevent, abatement in suits, and having due regard to the intention of the legislature, we are of opinion that the sci/re facias in this case was not wanting in form, and that the court below did not err in overruling the first exception.
The second ground of exception is, that it did not aver that the demand constituting the cause of action had been presented (amicably and for recognition) to the appellant.
The probate law of 1840 requires all claims for money to be presented to the executor or administrator before the commencement of an action against the succession. This was but the re-enactment of a provision of the former laws, and which was in full force at the time of the adoption of the act of 1838, respecting abatement in suits, and by which they were prevented from abating by the representative of the deceased being brought in and made a party to the suit. But whether such a provision was known to our laws or not, in 1838, is immaterial, as we are of opinion that this regulation has reference only to claims not already in suit and before the court for adjudication. The provision was wise and salutary and was designed to save the succession from costs and expenses on such claims as the administrator had substantial grounds for believing just and unpaid. Its object was, however, to prevent suits from being capriciously commenced against an administrator, not to suspend those already in progress against the decedent.
The suit itself is prima facie evidence that the deceased has refused to pay and raises the presumption that the administrator would'not acknowledge a claim which the debtor himself in his life time, having a perfect knowledge of its justice, had declined to discharge.
To extend the provision to a claim already sued upon would abate the action and throw the costs upon the plaintiff. This would be an onerous grievance to be inflicted on a suitor who had been compelled to resort to legal proceedings for the recovery of his claims, and ought not to be imposed by judicial interpretation unless the legislative in-_ tention to that effect is plain and obvious. The administrator has it; in his power, after being called into court, to acknowledge the justice of the claim and save further expense to the estate.
It is true that on the judgment, execution does not issue against the property of the succession and the judgment is ranked only among the acknowledged debts of the estate. But although it is the misfortune of the plaintiff that his claim had not passed into judgment in the life-time of the deceased, yet this affords no reasonable ground for taxing him in addition with the burthen of the costs expended before the death of the debtor.
*(112) In relation to the question of interest it is only necessary to remark that by the terms of the note, interest is agreed to be paid at the rate of ten per cent.; and therefore its computation by the jury at that rate was lawful.
It is ordered, adjudged and decreed, that the judgment of the court below be in all things affirmed.