Mary Daniel **CONRAD**, Ind. and as Executrix of the Estate of Grover C. *Conrad*, **Appellant**,

v.

Ruby Wanda **JUDSON** et al., **Appellees.**

No. 17588.

Court of Civil Appeals of Texas, Dallas.

March 5, 1971.

Rehearing Denied April 9, 1971.

Harvey L. Davis, Dallas, for appellant.

Robert H. Mow, Jr., James E. Coleman, Jr., Carrington, Coleman, Sloman, Johnson & Blumenthal, Bascom H. Thomas, Jr., Bowyer & Thomas, Dallas, for appellees.

BATEMAN, Justice.

The five appellees are sisters. They sued their father, Groved C. Conrad, to establish a partnership between him and them for the management and disposition of community assets of Conrad and his first wife, Edith Conrad, mother of appellees, who died intestate. Appellees sought a declaration of ownership by the partnership of certain real property, an accounting of all partnership operations, and a distribution to them of their mother's estate not previously distributed, and for general relief. Conrad died while the suit was pending and his second wife, Mary Conrad, was substituted as legal representative of his estate and also in her individual capacity. She filed an amended answer and counterclaim for the value of Conrad's services in operating the properties, and her attorney's fee under Vernon's Ann.Civ.St., Art. 2226.

The jury found, in response to the issues submitted to them: (1) the existence of a partnership between Conrad and the appellees beginning on or about July 1, 1950; (2) which continued to exist as such until Conrad's death on or about February 4, 1966; and (3) that Conrad was the manager of the partnership throughout its existence. The court rendered judgment on June 18, 1970, the pertinent elements thereof being:

1. That the partnership so found to exist, and called "G. C. Conrad, Et Al," be declared dissolved as of February 4, 1966;

2. That appellee Kathryn Louise McCarthy be appointed as surviving partner to wind up the affairs of the partnership;

3. That certain real property known as the Lake Ranch in Collin County, Texas, and as 5530 Lobello Drive, in Dallas, Texas, be declared assets of "G. C. Conrad, Et Al," with title and possession awarded to and vested in said surviving partner as such; subject, however, to a homestead right, during her lifetime, to the use, benefit and enjoyment of one-half of the net proceeds of the sale of 5530 Lobello Drive, after payment of all expenses in connection therewith, in Mary Daniel Conrad, individually;

4. That the sum of $54,751.05 be debited to the capital account of Conrad on the partnership books, to reflect reversal of his "unauthorized drawings" found by the auditor and to reverse one-half of an unexplained credit of $5,000 which Conrad took for himself, as also stated in the auditor's report, so that after doing so Conrad's account would show a deficit of $40,298.12;

5. That Kathryn L. McCarthy, as such surviving partner, have and recover from appellant, individually and as executrix of Conrad's estate, $40,298.12 principal (representing the said deficit or overdraft) together with $41,076.27 as interest accrued to May 31, 1970 at 6 per cent per annum on the following unauthorized withdrawals by Conrad:

a. On $255.13 from Dec. 31, 1951

b. On $9,951.85 from Dec. 31, 1955

c. On $4,777.50 from Sept. 30, 1963

d. On $2,500 from Jan. 2, 1954

e. On $60,000 from Dec. 31, 1963

f. On $14,500 from Dec. 31, 1964,

together with interest on the total sum of $81,374.39 from May 31, 1970;

6. Fixing the court-appointed auditor's fee at $5,850 and taxing it and all other costs against appellant.

7. That all portions of the cause of action relating to the winding up of the affairs of the dissolved partnership "and the determination of the amount of credits, if any, to be given to the capital account of Grover C. Conrad, deceased, for purchase moneys supplied by him in the purchase of Lake Ranch," be severed and docketed under a different number, "to remain under the continuing equitable jurisdiction of this Court until all affairs of the dissolved partnership are wound up and all properties distributed"; and

8. That appellant take nothing by her counterclaim.

■ Appellant presents twenty-nine points of error on appeal. All of these except Nos. 14 and 29 are based upon assignments of error contained in appellant's amended motion for new trial. Appellees object to our consideration of these points because the so-called amended motion for new trial is in fact a second amended motion for new trial for which there is no authority in the rules. This contention is based upon the quite unusual circumstance that on June 26, 1970 two motions for new trial were filed, one by the appellant herself (a layman) entitled "Notice of Appeal for a New Trial," and the other in more traditional form signed by her then attorney of record. Appellees contend that since there is authority in the rules for only one motion for new trial and one amended motion for new trial, one of the motions filed June 26, 1970 must be considered as an amendment of the other, and that when the instrument entitled "Defendants' Amended Motion for New Trial" was filed on July 16, 1970 it in reality was a second amended motion for new trial and not entitled to be considered because of the prohibition in Section 2 of Rule 329b, Vernon's Texas Rules of Civil Procedure, against the filing of more than one amended motion for new trial.

We do not agree with appellees in this. Neither of the motions filed on June 26, 1970 purports to amend the other, and there is nothing in the record to indicate that either the appellant or her attorney knew that the other was filing a motion. Under these circumstances, we think the trial court correctly ruled that the two motions filed on June 26, 1970 should be considered as one motion and the amended motion filed on July 16, 1970 as the only amended motion for new trial. This is consistent with the spirit of liberal construction demanded by Rule 1, T.R.C.P.

Appellant presents her first four points of error on appeal together, and we shall so consider them. Under these points it is urged that the trial court erred (1) in failing to hold that the amounts charged by G. C. Conrad for his services to the enterprise known as "G. C. Conrad, Et Al" were reasonable, (2) in failing to hold that the making of a charge for such services is usual and customary in the oil industry, (3) in excluding the testimony of appellant's expert witnesses, Winn and Price, concerning the reasonable and customary charges for such services, and (4) in overruling appellant's motion for judgment notwithstanding the verdict because Conrad was entitled as a matter of law to compensation.

As noted above, the jury found that a partnership existed between Conrad and the appellees. There is no evidence that the parties to that arrangement ever agreed upon compensation for Conrad for his services in managing the jointly owned properties; in fact, the evidence is fairly certain that no such agreement was ever made. Appellees' mother, Edith Conrad, died January 14, 1949, intestate. Included in the community estate of Grover and Edith Conrad were half of the outstanding shares of common stock of Oil Well Drilling Company. On July 1, 1950 this stock was cancelled and the assets of the corporation represented by said stock, consisting of oil and gas leases, land, buildings and equipment, valued at $264,409.65, were distributed, 50 per cent to Conrad and 10 per

cent to each of the appellees. These assets were kept intact and managed by Conrad over a period of about fifteen years. Records were kept and income tax returns filed designating this enterprise as "G. C. Conrad Et Al."

■ The general rule is that a partner is not entitled to compensation for services rendered to the partnership business unless there has been an agreement therefor. This is embodied in the Texas Uniform Partnership Act, Vernon's Ann.Civ.St., Art. 6132b, § 18(1) (f). See also 44 Tex. Jur.2d, Partnership, § 54, pp. 381–2.

The facts of this case do not provide a basis for a finding of an implied contract and thus bring it within the exception to that general rule announced in Hooker v. Williamson, 60 Tex. 524, 527 (1883); Montgomery v. Burch, 11 S.W.2d 545 (Tex.Civ.App., Amarillo 1928, writ dism'd); Lewis v. Hill, 409 S.W.2d 946 (Tex.Civ.App., Amarillo 1966, no writ); and 40 Am.Jur., Partnership, § 124, p. 216.

■ It was clearly contemplated by all the partners, when they entered into the relation, that Conrad would act as manager and would be the only partner active in the conduct of the business, yet no agreement for his compensation was made or even suggested at that time. Such an agreement "may not be implied contrary to the intentions or understanding of the parties or against the express declaration of the person to be charged." Lewis v. Hill, 409 S. W.2d 946, 949 (Tex.Civ.App., Amarillo 1966, no writ).

■ There was in evidence a brief exchange of correspondence between Conrad and the appellee Mrs. Judson, who lived in New York, beginning in December, 1961, and extending into 1963, from which it clearly appears that there was never an agreement as to his compensation, although in one letter she stated that she realized that he was entitled to "a fair fee" which she felt sure could be agreed upon if they ever reached the point where the accounts of all the owners were "evened up." The evidence does not show that Conrad ever actually withdrew from the partnership assets any money as salary, only that in 1963 he caused to be shown on the books of the partnership a credit to his account of $60,000 described as "Partners' salary—for services rendered the Partnership," and in 1964 a similar credit for salary in the sum of $14,500 with a notation on the books, "To record partner's salary for the year." These were mere bookkeeping entries rather than actual withdrawals, but without those credits his account would have been substantially overdrawn. Furthermore, there was little, if any, evidence of any particular work he did or services he rendered for "G. C. Conrad, Et Al" during the period he was in charge of the operation.

Under these circumstances, the appellees were entitled to rely on the general rule, above mentioned, which would deny their father any compensation. If appellant would seek to bring the case within the above mentioned exception, the burden was on her to introduce evidence and obtain jury findings of an implied contract, as well as the amount of such reasonable compensation. Conrad stood in a fiduciary relationship to his daughters; he occupied a position of great trust. The record indicates quite clearly that he withdrew sums largely in excess of his share of earnings and profits and caused these salary items to be credited to his account, without the semblance of any agreement on the part of appellees, or either of them, in order to convert the overdraft in his account to a credit balance.

■ Moreover, with respect to the fourth point of error, the defendants' motion for judgment, which both sides apparently treat as a motion for judgment notwithstanding the verdict, merely asks the

court to disregard the answers of the jury to the three special issues submitted and to make the necessary additional findings in order to enter judgment in appellant's favor. Rule 301, T.R.C.P., authorizes two separate motions, one for judgment *non obstante veredicto* and the other to disregard special issue jury findings. To be entitled to the first it must be shown that a directed verdict would have been proper; and to be entitled to the second it must appear that there was no evidence to support the findings. Our review of the entire record in this case reveals clearly to us that a directed verdict for appellant would not have been proper; and there was ample evidence to support the findings. For these reasons we approve the trial court's action in overruling the motion, if in fact it did. However, we find nothing in the transcript to indicate that this motion was ever presented to, or acted upon by, the trial court. Therefore, it was waived and nothing in this respect is presented to this court for review. Moss v. Katz, 69 Tex. 411, 6 S.W. 764 (1887); Marine Production Co. v. Richey, 89 S.W.2d 1078 (Tex. Civ.App., Texarkana 1935, writ dism'd).

Accordingly, appellant's first four points of error on appeal are overruled.

In her Points of Error Nos. 5, 6, 8, 9 and 10 appellant contends that there was no evidence, and insufficient evidence, of the existence of the partnership and, therefore, that the trial court erred in overruling her motion for judgment and her objections to the special issues submitted. We think there was an abundance of evidence to support all three of the jury findings. There was evidence that, shortly after appellees' mother died, Conrad proposed that he operate the business and handle the community assets because of his familiarity therewith and his opinion that his deceased wife would desire that he do so because in that way he and the daughters could all share the profits and the losses. The daughters agreed, and a set of books was opened in the name of "G. C. Conrad, Et Al." The enterprise was called, and apparently considered, a partnership by Conrad in his letters to Mrs. Judson and in her letters to him, as well as by the accountants employed to open its books in 1950 and the accountant appointed by the trial court to examine the books and state the accounts of the parties. The books so opened by the first accountants set up the capital accounts of the partners, showing Conrad as owner of 50 per cent, and each of the five appellees 10 per cent, of the capital assets as well as of the profits and losses. The operation was quite profitable for several years and the net profits were credited to the respective owners' capital accounts in the proportion stated. In subsequent years there were net losses and these were charged to the said capital accounts in the same proportion. United States income tax returns on Form 1065 were filed each year, and one in 1961 to the New Mexico Department of Revenue, all signed by Conrad under the penalties of perjury, and in each of them the taxpayer was designated as a partnership and he and his daughters as the partners. In a letter to an officer of the First National Bank Conrad spoke of appellees as the other partners in the partnership. Joe Melton, who was employed by Conrad to do the accounting work for "G. C. Conrad, Et Al," over a period of years, testified that Conrad always referred to the organization as a partnership. All of this evidence strongly indicated the existence of a partnership, and we find in the record no evidence to the contrary. Kitchens v. Kitchens, 372 S.W.2d 249, 253 (Tex.Civ.App., Waco 1963, writ dism'd); Nolen v. Rig-Time, Inc., 392 S.W.2d 754, 757 (Tex.Civ.App., Corpus Christi 1965, writ ref'd n. r. e.). A clearer case of partnership could hardly be demonstrated in the absence of a written partnership agreement.

Appellant's Points of Error Nos. 5, 6, 8, 9 and 10 are overruled.

By her seventh point of error appellant complains of the definition of the

word "partnership" contained in the court's charge to the jury, as follows:

> "By the term 'partnership' as used in this charge, is meant a relationship between or among two or more persons where there is a common enterprise and a community of interest therein, the prosecution of the common enterprise for the joint benefit of the parties, and a right of each of the parties to participate to some extent in the profits as such and an obligation of each of the parties to bear some portion of the losses, if any, sustained by the business."

Appellant objected thereto because it did not tell the jury that a partnership is a contract of two or more competent persons to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business, and to divide the profits and bear the loss in certain proportions. The definition given by the court was correct. It embodied the elements of a partnership as set forth in Freeman v. Huttig Sash & Door Co., 105 Tex. 560, 153 S.W. 122, 125 (1913), and the form thereof was approved in Cavazos v. Cavazos, 339 S.W.2d 224, 226 (Tex.Civ.App., San Antonio 1960, writ ref'd n. r. e.) and Willis v. Harvey, 349 S.W.2d 323, 325–326 (Tex. Civ.App., Houston 1961, writ ref'd n. r. e.).

Moreover, the asserted error in the definition could not, in our opinion, be reasonably calculated to cause the rendition of an improper judgment and was therefore harmless. Rule 434, T.R.C.P. Accordingly, the seventh point of error is overruled.

By her eleventh and twelfth points of error appellant asserts that, because of appellees' knowledge that Conrad had charged $1,000 per month for his services during the first four months of the "G. C. Conrad, Et Al" operation, which began July 1, 1950, and knew prior to the partial distribution of "G. C. Conrad, Et Al" properties in September, 1963 that Conrad had charged that operation a salary of $60,000 for his services since 1950, their action was barred by laches and the two and four year statutes of limitation, which she pled.

These points are based upon two facts: the first being that the firm of accountants employed to set up the books of "G. C. Conrad, Et Al" prepared a report on that operation from its inception on July 1, 1950 through October 31, 1950, which showed a salary to Conrad of $1,000 per month for the four months covered by the report; the other being that on November 12, 1963, thirteen years later, Conrad wrote a letter to his daughters, to which he attached an unaudited balance sheet showing the partners' capital accounts as of September 30, 1963 and also showing the $60,000 salary credited to Conrad's account.

■ We see no ground for reversal in either of these points of error. The $4,000 salary paid or credited to Conrad in 1950 is not complained of in appellees' petition and, so far as we can see from the record before us, no salary was paid or credited to him after October 31, 1950 until he arbitrarily had his account credited with the $60,000 in 1963, approximately thirteen years later. This suit was filed on December 23, 1965, more than two but less than four years after Conrad informed appellees of the $60,000 item. The delay of approximately 25 months in filing the suit cannot be said to have harmed or prejudiced Conrad in any way; therefore, the doctrine of laches is inoperative here. 35 Tex.Jur.2d, Laches and Stale Demands, § 10, p. 470.

■ The applicable limitation statute is Art. 5527, § 3, V.A.C.S., which provides that an action by one partner against his co-partner for a settlement of partnership accounts shall be commenced and prosecuted within four years after accrual of the cause of action and not afterward. It has been held that the four-year statute applies to a suit between joint adventurers as well as between partners, and that the cause of action does not accrue and limitation begin to run until the termination of the relationship, whether a joint adventure

or a partnership, or at least until after a demand to pay over accrued profits has been made and refused. Cockburn v. Irvin, 88 S.W.2d 747 (Tex.Civ.App., Beaumont 1935, writ dism'd); Dyer v. Sterett, 248 S.W.2d 234, 240 (Tex.Civ.App., San Antonio 1952, no writ). The two-year statute (Art. 5526, V.A.C.S.) does not apply to dealings between partners. Heathington v. Heathington Lumber Co., 398 S.W.2d 822, 825 (Tex.Civ.App., Amarillo 1966, no writ), citing Morris v. Nunn, 79 Tex. 125, 15 S.W. 220 (1890).

■ Moreover, appellant made no effort to obtain jury findings with respect to these affirmative defenses and, therefore, waived them. Rule 279, T.R.C.P.; Burba v. Lary, 296 S.W.2d 797 (Tex.Civ.App., Waco 1957, writ ref'd n. r. e.).

We overrule Points 11 and 12.

■ In her Point of Error No. 13 appellant attacks the recovery of a money judgment by appellees because their claim was never filed against the estate of G. C. Conrad, as required by Sections 298 and 314, Texas Probate Code, V.A.T.S. As stated above, this suit was filed against Conrad in his lifetime. His death did not abate the suit. The proper procedure is set forth in Rule 152, T.R.C.P., permitting the legal representative of the deceased defendant to be substituted for him, as was done in this case, and providing that the suit shall proceed against such representative. The proper practice is then to certify the judgment to the probate court for payment in the course of the administration. Boone v. Roberts, 1 Tex. 147 (1846); Lauraine v. Ashe, 109 Tex. 69, 191 S.W. 563, 196 S.W. 501 (1917); Converse & Co. v. Sorley, 39 Tex. 515 (1873); Farmers' & Merchants' Nat. Bank v. Jones, 254 S.W. 251, 254 (Tex.Civ.App., Texarkana 1923, no writ). Point of Error No. 13 is overruled.

■ By her Point of Error No. 14 appellant complains of the trial court's failure to file findings of fact and conclusions of law as requested by her. She says the judgment went far beyond the three jury findings, as illustrated by the court's finding that Conrad's drawings from the partnership were unauthorized; that appellees were under the burden to show they were unauthorized and did not request issues or obtain jury findings to that effect.

This argument is without merit. This was a jury case and there is no requirement or authority in the rules for findings of fact and conclusions of law in a jury case. Rule 296, T.R.C.P.; Ditto v. Ditto Investment Co., 158 Tex. 104, 309 S.W.2d 219, 220 (1958); T. A. Manning & Sons, Inc. v. Ken-Tex Oil Corp., 418 S.W.2d 324, 326 (Tex.Civ.App., Austin 1967, writ ref'd n. r. e.); Cox v. Rhodes, 233 S.W.2d 924, 926 (Tex.Civ.App., El Paso 1950, no writ).

■ The written report of the auditor appointed by the court shows clearly and without question that Conrad's capital account on the partnership books was overdrawn when he attempted to bolster it by crediting it with the disputed salary items. The auditor's report was not excepted to before trial and was admitted in evidence without objection. There was no evidence to the contrary. Hence, there was nothing to submit to the jury in this respect. Rule 172, T.R.C.P.; Kempner v. Galveston County, 76 Tex. 450, 13 S.W. 460 (1890); Ware v. Harkins, 228 S.W.2d 537, 539 (Tex.Civ.App., Waco 1950, writ ref'd n. r. e.); Griffin v. Sevier, 234 S.W.2d 272 (Tex.Civ.App., Galveston 1950, no writ). Point of Error No. 14 is overruled.

■ Under her Points of Error Nos. 15 and 16 appellant objects strenuously to the money judgment as rendered against her as an individual because there is no basis in the record for such personal liability. In reply, appellees make it clear they intended such personal liability only to the extent that she became the recipient of property belonging to Conrad's estate, and they attach to their brief a "Remittitur and

Release" as to all else. This restriction on appellees' right to recover is obviously correct and the judgment will be reformed accordingly.

We now reach the question, raised by appellant's Point of Error No. 24, of whether the Lake Ranch property was actually a partnership asset and whether it was proper for the court to decree title thereto in Mrs. Kathryn L. McCarthy as surviving partner. It appears without dispute from the record that between the years 1959 and 1962 the money expended on the ranch property was carried on the partnership books as an "account receivable" but that the land itself was carried as an asset on such books. It was shown as an asset in the United States income tax return filed by the partnership for the calendar year 1961. It appears from the auditor's report, and there is no evidence to the contrary, that the money expended by G. C. Conrad for the purchase and equipping of the ranch property came from partnership funds.

In this connection it is important to note that the jury found that Conrad was the managing partner of the partnership. As such, he stood in a higher fiduciary relationship with the other partners than partners usually occupy. Smith v. Bolin, 153 Tex. 486, 271 S.W.2d 93, 97 (1954). The burden is upon the managing partner to dispel all doubts concerning his conduct toward the partnership or the other partners, and if he is unable to carry this burden all doubts will ordinarily be resolved against him. His duty is said to be analogous to that of a trustee. Cook v. Peacock, 154 S.W.2d 688, 690 (Tex.Civ. App., Eastland 1941, writ ref'd w. o. m.). He owes the duty to keep an accurate account of his transactions with or for the partnership, and, if he fails to keep such account, all doubts respecting particular items will ordinarily be resolved against him on an accounting. Doubt as to the validity of credits which he claims must be resolved against him. Cook v. Peacock,

supra; 44 Tex.Jur.2d, Partnership, § 53, p. 380; Newman v. Newman, 195 S.W.2d 393, 397 (Tex.Civ.App., San Antonio 1946, affirmed 145 Tex. 433, 198 S.W.2d 91). Partners occupy a fiduciary relationship with each other and the partnership, and this is true, whether the enterprise be considered a partnership or merely a joint adventure. Johnson v. Peckham, 132 Tex. 148, 120 S.W.2d 786 (1938). All doubts, therefore, arising from the Lake Ranch transactions must be resolved against Conrad and his estate.

Unless a contrary intention appears, property acquired with partnership funds is partnership property. Texas Uniform Partnership Act, Art. 6132b, § 8; Brinkley v. Harkins, 48 Tex. 225 (1877); Hengy v. Hengy, 151 S.W. 1127, 1131 (Tex.Civ.App., San Antonio 1912, no writ), wherein it is stated:

"We are of the opinion that when a partner has purchased real estate with partnership assets, but in his own name, without the knowledge or consent of his copartner, and reports it to his copartner as firm property directly, or indirectly, by crediting the firm with rents and charging it with taxes and insurance, he cannot afterwards be heard to deny that the property purchased is in fact partnership property; nor would it be necessary that the property so purchased be used for partnership purposes."

We think there is a presumption, under the above authorities, and particularly the Texas Uniform Partnership Act, that property purchased with partnership funds is intended to be partnership property; and if one would contend otherwise the burden would be on him or her to offer proof of a different intention and to obtain an affirmative jury finding thereon. No such finding was requested by appellant or made by the jury, and in this state of the record we think the trial court properly held the Lake Ranch to be a partnership asset. Hicks v. Hunter, 183 S.W. 792

(Tex.Civ.App., San Antonio 1916, writ ref'd). If the verdict did not find all of the facts necessary to form the basis of a judgment, since all of the questions submitted were answered the trial court is presumed to have found from the evidence the omitted facts necessary to support the judgment, there being evidence in the record to authorize the finding thus presumed. Southern Cotton-Oil Co. v. Wallace, 23 Tex.Civ.App. 12, 54 S.W. 638, 642–643 (Galveston 1899, no writ); Rotan Grocery Co. v. Noble, 36 Tex.Civ.App. 226, 81 S.W. 586, 589 (Dallas 1904, writ ref'd); McKnight v. Renfro, 371 S.W.2d 740, 746 (Tex.Civ.App., Dallas 1963, writ ref'd n. r. e.). We therefore overrule appellant's Point of Error No. 24.

■ By her Points of Error Nos. 17 and 18 appellant says that the judgment is erroneous in that it awards appellees a "double recovery"—title to the Lake Ranch property, on the theory that it was purchased and equipped with partnership funds, and a money judgment for the deficit in Conrad's capital account, which was, in part at least, created when the amounts so expended for the property were charged or debited to that account.

The money judgment of $40,298.12 was arrived at in the following manner: it appears from page 8 of the auditor's report that, based on book values, G. C. Conrad's capital account as of December 31, 1965 showed a credit balance of $14,453.03; that upon reversing the unwarranted salary items totaling $74,500, half of that figure, or $37,250, was deducted from the said credit balance of $14,453.03, leaving a deficit or overdraft of $22,796.97; that additional items, not necessary to itemize here, totaling $15,001.05 should also have been charged against Conrad's account, increasing the deficit or overdraft to $37,798.02; and that the books showed an unidentified credit to Conrad's account on January 2, 1954 in the amount of $5,000. The trial court, in arriving at the amount of its judgment, added one-half of that unidentified credit, or $2,500, to the said figure of

$37,798.02, producing a total deficit or overdraft of $40,298.02, and adjudged that the surviving partner should have judgment against Conrad's estate for $40,298.12 for the benefit of the partnership.

Appellant urges that this was erroneous, and in effect produced a double recovery, in that all of the above resulting figures included, or were in part based upon, a charge or debit to Conrad's capital account on December 31, 1962 in the sum of $48,-264.73 as representing the value, according to the partnership books, of the Collin County farm lands known as the Lake Ranch. As we have hereinabove held, the ranch was a partnership asset. It was shown on the books as the "G. C. Conrad Lake Ranch Account," and the debit balance of this account during the years 1959, 1960, 1961 and 1962 was built up to $48,-264.73. The ranch was carried as a partnership asset and shown as such in the United States income tax return filed by the partnership for the calendar year 1961. However, on December 31, 1962 this entire debit of $48,264.73 was charged to Conrad's personal account, and the partnership income tax return for the year 1962 did not show the ranch as a partnership asset. In other words, it is apparent from the record that Conrad decided unilaterally in 1962 that this was his personal investment rather than that of the partnership.

If we could be certain that all of the $48,264.73 charged to Conrad's account represented partnership funds expended in the purchase of the Lake Ranch, we would doubtless be justified in holding that it would be unjust for the partnership to be awarded title to a ranch which had been purchased wholly out of Conrad's own account or funds. In that situation there would appear to have been a "double recovery" as contended by appellant, and equity would require that the cost be distributed among the partners according to their pro rata shares in the ownership of the partnership assets.

But we have no such assurance. The auditor's report lists a great many items,

which are included in the said total of $48,264.73, but which are designated as "Cash Advances," "Advances" and "Loans." These are not insignificant items; they amount to a total of more than $20,000, but the report is silent as to the purpose or recipient of any of the said "advances" or loans, and as to what connection or relevance, if any, they might possibly have to the purchase of the ranch property. There are numerous other items in the account which we are unable to say from the evidence are connected with the acquisition of the Lake Ranch. We may not assume such connection or relevance, and are of the opinion that the trial court was warranted in rendering judgment that Mrs. McCarthy, as surviving partner recover, not for herself and her sisters personally, but on behalf of the partnership in which the Conrad estate owns a half interest, the full amount of the said deficit of $40,298.12. If, in the process of winding up the affairs of the firm, it develops, or can be shown, that any of Conrad's money went into the purchase of the ranch, equitable adjustment may be made in accordance with the express provisions of the judgment.

Therefore, we overrule appellant's Points of Error Nos. 17 and 18.

By her Point No. 19 appellant challenges the correctness of the judgment for $41,076.27 interest on alleged unauthorized withdrawals because there is no evidence that the withdrawals were unauthorized. We think this use of the word "unauthorized" may be somewhat. misleading. Conrad was in complete charge of the operation and we see nothing in the record indicating that he was bound to apply for and obtain express authority or permission of his daughters every time he withdrew funds, or that the daughters should obtain authority from each other when they made withdrawals. All of the partners withdrew funds from time to time—often when the amounts withdrawn exceeded their shares of earnings and profits and consequently depleted their capital accounts to some ex-

tent, but nowhere in the record do we find any claim that any of them owed interest to the others on such withdrawals.

The phrase "unauthorized withdrawals," as used in the judgment and by appellant in her nineteenth point of error, in our opinion, was intended to refer to withdrawals by a partner which not only exceeded his or her share of profits and earnings but completely obliterated his or her capital account so that further withdrawals would necessarily lessen the value of the capital accounts of the other partners. The auditor's report shows that Conrad, and he alone, did that very thing, creating a deficit or overdraft in his account found by the auditor to be $40,298.-12, which is the principal amount of the judgment. However, we think the trial court erred in also awarding the additional amount of $41,076.27 as interest.

The general rule is that, in a suit for partnership accounting, sums found to be due by one partner to another do not bear interest until after the partnership account has been settled and the balance owing ascertained. 44 Tex.Jur.2d, Partnership, § 261, p. 585; McKay v. Overton, 65 Tex. 82, 86 (1885); Jones v. Mitchell, 47 S.W. 2d 371, 375 (Tex.Civ.App., Dallas 1932, writ ref'd); Lewis v. Hill, 429 S.W.2d 572, 575 (Tex.Civ.App., Tyler 1968, no writ); Hairston v. Richie, 338 S.W.2d 263, 268 (Tex.Civ.App., Fort Worth 1960, no writ). An exception to this general rule is announced in Corralitos Co. v. Mackay, 31 Tex.Civ.App. 316, 72 S.W. 624, 626 (San Antonio 1903, writ ref'd), that "where an accounting is delayed through misconduct or fraud, the partner guilty of such misconduct or fraud will be charged with interest for the time an accounting has been thereby delayed." We find nothing in this record to bring this case within that exception. In any event, it was improper to include in the recovery interest on the two salary credits aggregating $74,500. As stated above, these were mere bookkeeping entries and not "the use or forbearance or detention of money," within the statutory

definition of interest. Art. 5069–1.01, V. A.C.S.

Point of Error No. 19 is sustained.

By her Point No. 20 appellant says the trial court "erred in reversing the credits for the loss on the Peerless Gas deal," which was one of the items, among several, found in the auditor's report to be chargeable to Conrad's account.

 This constitutes an attack on a portion of the report of the auditor appointed by the court to state the accounts between the parties. As stated, this report was not excepted to before trial and was admitted in evidence without objection. Under these circumstances the report constitutes conclusive evidence as to such accounts, and the parties are not permitted to dissect the report and attack each segment separately. Griffin v. Sevier, 234 S.W.2d 272 (Tex.Civ.App., Galveston 1950, no writ); Cook v. Peacock, 154 S.W.2d 688 (Tex.Civ.App., Eastland 1941, writ ref'd w. o. m.). If the rule were otherwise, the report of the auditor, who is an officer of the court, would be rendered null and void and his efforts futile. Rule 172, T.R.C.P.; Tracy v. Willacy County, 169 S.W.2d 217 (Tex.Civ.App., San Antonio 1943, no writ). The twentieth point of error is overruled.

 We also overrule Points 21 and 22, which complain of that part of the judgment awarding title and possession of the Conrad home at 5530 Lobello Drive to Mrs. McCarthy as surviving partner. Appellant concedes that the property is an asset of "G. C. Conrad, Et Al," but contends that her ouster from her homestead, which was based on the said auditor's report, violates her rights under Article 16, § 50, of the Texas Constitution, Vernon's Ann.St., which protects the homestead from forced sale for debts other than purchase money, taxes and improvements.

This constitutional provision is inapplicable here because the judgment does not or-

der the homestead sold for debt. Section 52 of Article 16, however, does apply. As shown by the audit report, this property was acquired in 1951 with proceeds of the sale of the home of Conrad and his first wife, Edith Conrad, which home had also been an asset of "G. C. Conrad, Et Al." When Edith Conrad died intestate her children (the appellees) inherited her community one-half of the homestead but were not entitled to partition during Conrad's lifetime, as he had the right to use and occupy it as long as he lived. Article 16, § 52, Texas Constitution. But appellant, who was Conrad's second wife, did not have the same right of occupancy during her lifetime. All she is entitled to, upon sale of the home, is a life estate in the portion of the proceeds in which Conrad had a vested right, and this is exactly what the judgment awarded her. Clements v. Maury, 50 Tex.Civ.App. 158, 110 S.W. 185 (Austin 1908, writ ref'd); Marino v. Lombardo, 277 S.W.2d 749, 754 (Tex.Civ.App., Beaumont 1955, writ ref'd n. r. e.).

Her Point of Error No. 23 complains of that part of the judgment awarding title to the Lake Ranch property to Mrs. Kathryn L. McCarthy as surviving partner and in ordering appellant to convey the property to her, because there was no evidence as to how much of appellant's separate funds or community funds went into the Lake Ranch property. This point is overruled, because if any of appellant's separate funds or community funds went into this property, she failed to carry her burden of showing such fact and seeking and obtaining a jury finding thereon.

Under her Point of Error No. 25 appellant complains of the taxing of the auditor's fee of $5,850 against her, not on the ground that the amount is unreasonable, but on the ground that the appointment was unnecessary and the report useless. The facts revealed by the record do not support this contention and the point of error is overruled. This was one of the situations contemplated by Rule 172, T.R.C.P., and the trial court was clearly justified in

appointing an auditor, in allowing him a reasonable fee and taxing it, as part of the costs, against the losing party.

Appellant's Point of Error No. 26 complains of the severing of one part of the controversy from the other. This is based entirely upon appellant's contention that there was no partnership. Having upheld the jury's finding that there was a partnership, we overrule this point of error.

By her Point of Error No. 27 appellant complains of the trial court's refusal to allow her counterclaim for the value of personal services rendered by her deceased husband for the partnership. Since we have held that in the absence of an agreement therefor the partner has no right to demand or recover compensation, we overrule this point of error.

We have carefully considered all of the matters discussed by appellant under her Points of Error Nos. 28 and 29, and find them altogether unsupported by the record and therefore overrule the same.

The judgment of the trial court is reformed in the following respects:

(a) The award of accrued interest in the sum of $41,076.27 is eliminated therefrom.

(b) The money judgment of $40,298.12 is against Mary Daniel Conrad only in her capacity as executrix of the estate of Grover C. Conrad, deceased, and not against her individually.

(c) No execution shall issue on said money judgment, but it shall be taken into consideration in the winding up of the affairs of the partnership known as "G. C. Conrad, Et Al," and in the administration of the estate of Grover C. Conrad, deceased.

In all other respects the judgment is affirmed.

The costs of this appeal are taxed, half to appellant and half to appellees.

Reformed and affirmed.