Robert A. BIGGS, Appellant,

v.

FIRST NATIONAL BANK OF LUBBOCK, As Independent Executor of the Estate of Claribel Lee Biggs, Deceased, Appellee.

No. 08–90–00061–CV.

Court of Appeals of Texas, El Paso.

April 10, 1991.

Rehearing Overruled May 8, 1991.

Hollis M. Browning, Ralph H. Brock, Lubbock, for appellant.

Aubrey J. Fouts, Carr, Evans, Fouts & Hunt, Steve Exter, First Nat. Bank of Lubbock, Donald M. Hunt, Carr, Fouts, Hunt, Craig, Terrill & Wolfe, Lubbock, Duane Guy, Shell Oil Co., Paul Tinsley, Houston, for appellee.

Before OSBORN, C.J., and WOODARD and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

In a contest between a surviving partner and the executor of the estate of the deceased partner's widow over an accounting and the characterization of certain alleged partnership assets, the surviving partner appeals from a judgment rendered by the court, based on jury findings, for money damages and for certain real property in favor of the widow's estate. We affirm in part and reverse and render in part.

Robert A. Biggs ("Robert") and his brother, Billy Biggs ("Billy") became partners in a farming operation near Idalou in 1960 or 1961. Billy died intestate in 1984, leaving his wife Claribel Biggs ("Claribel") as his sole heir. Claribel is now also deceased and the First National Bank of Lubbock ("Bank") is the executor of her estate.

When the partnership was formed, Robert was still in the Air Force, so Billy managed the operation. During this time, Robert testified that he purchased barbed wire, cedar posts and livestock and brought it to the farm. The brothers were each to own one-half of the assets. After his retirement from the service in September 1970, Robert became the managing partner and continued in that capacity until the partnership was dissolved, for which he was to receive two-thirds of the profits and he and Billy were to split the remaining one-third fifty-fifty. Robert operated the partnership on a cash basis, without any ledgers, journals or other financial records except for receipts. Robert used the same checking accounts for his personal funds and the partnership funds. The two were so commingled that the parties have been unable to distinguish the monies.

The partnership generally operated at a loss. When Robert took over the management, his capital account was $22,451.00 and Billy's was $22,529.00. When the partnership was dissolved, Robert's capital account totaled $240,097.08 and Billy's totaled a negative $116,252.91. David Teague, an accountant who prepared tax returns for the partnership, testified that he had informed Robert and Billy that the capital accounts were disproportionate. Robert and Teague both testified that the brothers intended to address this problem, but never did so. There appeared to be no hard feelings between the brothers over the disparity in the capital accounts.

According to the partnership tax returns, Robert made capital contributions of some $527,739.00 to the partnership during the time he managed it. Robert told his accountant that he was putting his military retirement income into the partnership, but this amount was not sufficient to keep the partnership solvent. Robert received income from government subsidies and from raising cattle and crops. He also received $200,000.00 from oil companies for damage to the surface that had occurred during drilling operations. His attorney advised him that this money was not taxable income, so he did not report it to his accountant. Other than Robert's testimony, there is no evidence that the $200,000.00 was properly treated as partnership income. The Bank claimed that half of this money should have been attributed to Billy's capital account.

Robert testified that the partnership property consisted of Sections 12 and 19 in Gaines County and a quarter section in Andrews County. The evidence shows that Billy bought Section 12 in 1960 in his name alone rather than in both names, a fact that Robert explains was a matter of convenience, never changed because it was "a family affair." Robert testified that at the time he was recalled into the Air Force in 1953, he had been operating a machine shop in Lubbock. Billy took over the shop and with Robert's permission, subsequently closed it and moved the stock, tools and machinery to Idalou. Not altogether clear, Robert suggests or claims that Section 12

was acquired through a trade or sale of the stock and machine tools. The brothers then each acquired a quarter section of Section 19 through the Texas Veterans Land program and bought the remaining two quarters with funds borrowed from Robert's mother-in-law. After he became manager in 1970, Robert moved out on the farm, consisting of the two sections, and proceeded to plow, plant, irrigate and graze cattle on the land. Billy acquired the quarter section in Andrews County in 1964. Initially, Robert claimed it was contributed by Billy to the partnership when it was acquired, but he then said it was contributed in 1970 when he became manager in exchange for Robert's work on an irrigation well and installing underground pipe.

A rift in the brother's relationship developed in February 1984 when, as a result of a dispute and lawsuit between the partnership and Shell Oil Company (later Shell Western E & P Inc.) over surface damage in connection with oil well activities, a settlement agreement was reached in which Shell was to purchase all but 18.27 acres of the surface estate of Section 12 for $400.00 an acre. Robert understood that each brother was to receive $400.00 per acre but when he read the agreement, it became evident to him that the $400.00 per acre was to go to Billy and he was to be paid only $3,500.00 for some caliche and some plastic pipe. When after a discussion, it appeared that Billy was adamant that the $400.00 per acre was his alone, Robert walked out of the meeting. After that, the brothers spoke only once before Billy's death.

As a result of the settlement, Billy's suit against Shell was dismissed. After Billy's demise, Robert amended his petition to bring in Billy's widow, Claribel, requesting an accounting from, and judgment against, her and Billy's estate and claiming an undivided one-half interest in Sections 12 and 19 of Gaines and the Andrews quarter section, as well as damages from Shell. Claribel and following her death, the First National Bank, Lubbock, Texas, as independent executor of her estate, counterclaimed against Robert for an accounting and Billy's share of the profits and assets, and for damages resulting from a breach of the fiduciary relationship and from retaining and using partnership property. At the conclusion of the trial, the jury determined that of the land, Section 19 was intended to be partnership property but that Section 12 and the Andrews quarter section were not. The jury also found that Robert had breached his fiduciary duties to Billy by failing to report and account for partnership funds and assets, assessing damages for such failure at $50,000.00, and by retaining partnership assets for his personal benefit to the exclusion of Billy, setting damages for such retention at $29,760.00. Although the jury found that Robert had retained exclusive possession and control of the land used in the partnership farm operation, it awarded nothing as damages for this retention. The relevant part of the damage question, "Special Issue No. 22," read as follows:

What do you find to be the amount of money, if any, which if paid now in cash, would fairly and reasonably compensate the Estates of Billy Dee Biggs and Claribel Lee Biggs for their damages proximately caused by the breach of fiduciary duties by Robert A. Biggs inquired about in each subdivision of the foregoing special issue?

ANSWER BY STATING AN AMOUNT IN DOLLARS AND CENTS, OR NONE, AS TO EACH OF THE FOLLOWING SUBDIVISIONS.

A. In failing to report and account for funds and assets coming into his possession which belonged to the partnership?

In answering this subdivision you should consider only the amount of money which you find Robert A. Biggs failed to report and account for which belonged to the partnership to the extent of the interest of Billy Dee Biggs to such funds.

ANSWER: $50,000.00

B. In retaining partnership assets for his personal benefit to the exclusion of Billy Dee Biggs or the Estates of Billy Dee Biggs and Claribel Lee Biggs after the death of Billy Dee Biggs?

In answering the foregoing subdivision, you will consider only the value, as of the date of death of Billy Dee Biggs, of the partnership interest in assets which were retained by Robert A. Biggs to the exclusion of the Estates of Billy Dee Biggs and Claribel Lee Biggs after the death of Billy Dee Biggs.

ANSWER: $29,760.00

C. [omitted]

Judgment was entered on the verdict, awarding the Bank as executor damages of $79,760.00 plus prejudgment interest of $42,538.64, and holding that only half of Section 19 was owned jointly by Robert and Claribel's estate (as a former partnership asset), and that of the remainder of Section 19, a quarter section was owned by the estate and a quarter section by Robert. The balance of the land including the 18.17 acre tract in Section 12 and the Andrews quarter section were held to be property of Claribel's estate.

In this appeal, Robert, the surviving partner, claims that the court erred by: (Point of Error No. One) not first rendering a required accounting of the partnership, (Point of Error No. Two) awarding specific tracts of property to the widow's estate in spite of a contrary jury finding, (Point of Error No. Three) awarding damages for withholding partnership property when he had a right to retain possession of the property after the death of his partner, (Point of Error No. Four) awarding prejudgment interest of $42,538.64 for the period before the partnership account has been determined and settled and (Point of Error No. Five) awarding any prejudgment interest since under the instructions to jury, it constitutes a double recovery.

■ Under Robert's first point of error, he asserts that the court must first render an accounting between the partners before one partner can sue another on matters involving partnership business and certainly before a judgment can be rendered. This, he claims, was never done. As a general rule, an accounting and settlement is prerequisite to a suit by one partner against another over claims arising out of partnership business. *Chipley v. Smith*, 292 S.W. 209 (Tex.Comm'n App.1927, judgm't adopted); *Kartalis v. Commander Warehouse Joint Venture*, 773 S.W.2d 393, 394 (Tex.App.—Dallas 1989, no writ); *Mitchell Resort Enterprises, Inc. v. C & S Builders, Inc.*, 570 S.W.2d 463, 464 (Tex. Civ.App.—Eastland 1978, writ ref'd n.r.e.). While the usual procedure to obtain a partnership accounting may be by a bill in equity, *Miller v. Howell*, 234 S.W.2d 925, 930 (Tex.Civ.App.—Fort Worth 1950, no writ), that does not mean that a separate suit is necessary. Texas has a blended system of law and equity which allows a court, based on the pleadings and evidence, to administer both legal and equitable relief in a single action. In this case, both parties pled for an accounting, Robert by his Third Amended Petition, filed some three years after his brother's death and Claribel as administratrix of Billy's estate by her counterclaim filed several months later. Robert, as managing partner, had control of what little there was in the way of partnership records and evidence. Robert was given a full opportunity to present his testimony and whatever evidence was available on the business and financial aspects of the partnership.

■ The question submitted to the jury (Special Issue No. 22, subdivision A) required it to consider all of the testimony and evidence presented and to reach a determination that would compensate Billy's estate to the extent of his partnership interest in the funds and assets which had come into Robert's possession and for which he had failed to report and account. In this case, a jury having been requested, it was within the jury's province to resolve all factual disputes, including the accounting between the partners. *See Conrad v. Judson*, 465 S.W.2d 819 (Tex.Civ.App.—Dallas 1971, writ ref'd n.r.e.). The jury in one broad question was asked, in effect, to render an accounting between the partners. Broad form submissions of jury questions such as this are not only permissible but are encouraged in appropriate cases under the Rules of Civil Procedure. Tex.R.Civ.P. 277; *Island Recreational Development*

*Corporation v. Republic of Texas Savings Association,* 710 S.W.2d 551 (Tex.1986). There is nothing in the record to show that Robert requested any jury questions or instructions, as required by Tex.R.Civ.P. 273, or that any request was refused, Tex. R.Civ.P. 276, nor is there anything in the record to show that Robert objected to the charge as given, as mandated by Tex.R. Civ.P. 274 if error is to be preserved. Where the record shows no objection to the charge nor the request of appropriate instructions and questions, any error in the form or substance of the charge as given was waived. *Hargrove v. Texas Employers' Insurance Association,* 332 S.W.2d 121 (Tex.Civ.App.—Amarillo 1960, no writ). Point of Error No. One is overruled.

In his next point of error, Robert asserts that the court erred in awarding a specific tract forming a part of Section 19 to Claribel's estate, another tract to Robert, and a third tract to Robert and the Bank jointly, in spite of the jury findings, under "Special Issue No. 1(B), (C) and (D)" that Robert and Billy acquired the three tracts (the South Half of the South Half, the North Half of the South Half, and the North Half, all of Section 19) with the intent that such tracts would be owned by the partnership. The jury also found in "Special Issue No. 3" that Billy acquired the North Half of the South Half of Section 19 and the North Half of that section with funds or property furnished by Robert, but that he did not acquire the South Half of the South Half of Section 19 with Robert's funds or property. Then the jury found in answer to "Special Issue No. 18" that Billy (and his successor) was the sole owner of the South Half of the South Half of Section 19. There is a clear conflict between the answers to Special Issue No. 1(B), (C) and (D) on the one hand and the answer to Special Issue No. 18 on the other unless the findings can be reconciled or one of the findings ignored as surplus. Although the Bank contends that the No. 18 is more specific than No. 1 and should thus control under the principle that specific findings control over general findings, citing *Grafa v. Morgan,* 696 S.W.2d 492 (Tex.App.—El Paso 1985, writ dism'd), we disagree.

While mere use of property by the partnership does not make it an asset of the partnership, the question of actual ownership is one of intention. *Littleton v. Littleton,* 341 S.W.2d 484 (Tex.Civ.App.—Houston 1960, writ ref'd n.r.e.). Under well-established partnership principles, ownership of property intended to be a partnership asset is not determined by legal title. The intention of the parties, as found by the jury and supported by the evidence, is controlling. *Logan v. Logan,* 156 S.W.2d 507, 512 (Tex. 1941); *King v. Evans,* 791 S.W.2d 531, 533 (Tex.App.—San Antonio 1990, writ denied); *Littleton,* 341 S.W.2d at 489. In conformity with the answers to No. 1, all of Section 19 was intended by the parties to be partnership property. That finding put equitable title to Section 19 in the partnership. The conflict between the answers to No. 1 and No. 18 can be reconciled by the conclusion, and we so conclude, that the jury in answer to No. 18 was merely finding that Billy was the sole owner of the legal title to one tract of Section 19. The word "owner" was not defined in the charge, but the charge did instruct that "all property originally brought into the partnership stock or subsequently acquired by purchase, or otherwise, on account of the partnership is partnership property."

Having reached the conclusion that Section 19 was and is partnership property, can the court partition and award it in accordance with which partner held legal title? We conclude that it cannot since, regardless of which partner had legal title, no partner owns specific partnership property but each owns a specific interest, in this case 50 percent, of such property. *King,* 791 S.W.2d at 533, 534; *Littleton,* 341 S.W.2d at 488. The court was powerless under such circumstances to partition and award such property in the absence of appropriate pleadings and without following the rules and law pertaining to the partition of real estate, *Littleton,* 341 S.W.2d at 488, or in the absence of an agreement by the parties. Even if it could be contended that Robert, by his failure to submit appropriate jury instructions and questions and to object to the charge as

given, had waived his right to have the partnership assets partitioned in accordance with law, although there is evidence in the record of per acre market value of the entire section, there is no evidence to support an implied finding by the court that the respective tracts of Section 19 were of equal market value as of the date of dissolution, i.e. the date of Billy's death. Point of Error No. Two is sustained.

■ Under his third point of error, Robert asserts error on the part of the trial court for including damages in the judgment, based on the jury finding, of $29,760.00 for his breach of fiduciary duties "[i]n retaining partnership assets for his personal benefit to the exclusion of Billy Dee Biggs or the Estates of Billy Dee Biggs and Claribel Lee Biggs after the death of Billy Dee Biggs?" Both parties agree that Robert virtually ceased the partnership business of farming after the sale of Section 12 to Shell and may have abandoned some of the personal property of the partnership at that time. Having ceased the business, from that time on, either partner had the right to file suit for dissolution of the partnership and an accounting. *Rice v. Lambert*, 408 S.W.2d 287 (Tex.Civ.App.—Corpus Christi 1966, no writ). Billy did nothing before his death to end the partnership, and nothing was done for approximately three years thereafter until the parties, Robert and Claribel, pled for an accounting in their respective pleadings. Although Robert, as managing partner, owed a fiduciary duty to keep accurate accounts and if he failed to do so, all doubts respecting the treatment of specific items should have been, and probably were by the jury, resolved against him, *Conrad v. Judson*, 465 S.W.2d 819, 828 (Tex.Civ.App.—Dallas 1971, writ ref'd n.r.e.), it was not his right and duty alone to dispose of the assets for the benefit of the partnership and seek an accounting. After Robert discontinued the partnership operation, Billy also had the right and duty. After his death, Claribel had the right to seek an accounting. The remedy of the surviving partner or the complaining party is in equity for an accounting and settlement of the partnership business. *Rice*, 408 S.W.2d at 291. Where

the partnership has been in business over a long period of time with numerous transactions requiring extensive accounting, as in this case, the general rule applies that an accounting and settlement between the parties is a condition precedent to an action by one partner against another over claims and transactions arising out of the partnership business. *Chipley*, 292 S.W. at 209, 210. Point of Error No. Three is sustained.

■ In Point of Error No. Four, Robert complains that the court erred by awarding prejudgment interest in the amount of $42,538.64 for the reason that the amount found to be owing does not bear interest until there has been an accounting and the amount ascertained. He correctly asserts that the general rule is that prejudgment interest is not allowable until the accounting has been completed and the balance owing by one partner to another has been ascertained. *Conrad*, 465 S.W.2d at 830; *Hairston v. Richie*, 338 S.W.2d 263, 268 (Tex.Civ.App.—Fort Worth 1960, no writ). As an exception to this rule, prejudgment interest may be added to the amount owed where an accounting has been delayed because of fraud or misconduct of one of the partners. *Id.* The breach of fiduciary duties by Robert, which the jury found, is not equivalent to a finding of fraud or misconduct which hindered or delayed the accounting. While Robert may have been negligent in his record keeping and may even have misappropriated partnership funds, those facts did not delay the accounting. The accounting was delayed by the fact that neither party sought an accounting until three years after the dissolution. The parties agree that Robert did not continue the partnership business after the sale of Section 12. Therefore, Section 42 of the Uniform Partnership Act, Tex.Rev.Civ.Stat.Ann., art. 6132b (Vernon 1970) is not applicable. *King*, 791 S.W.2d at 534. The facts here do not support an award of prejudgment interest. The fourth point of error is sustained, and having reached that result, it is unnecessary for us to reach Point of Error No. Five which complained of the award of prejudgment interest on another ground.

The judgment of the trial court is reversed and rendered as to the damages of $29,760.00 awarded to the Bank, as Independent Executor of the Estate of Claribel Lee Biggs, and as to the amount of $42,538.64 awarded as prejudgment interest. The judgment is also reversed insofar as it awarded title and possession of the North Half of the South Half of Section 19, Block A–24, Public School Lands, Gaines County, Texas to Robert A. Biggs, and the South Half of the South Half of said Section 19 to the First National Bank of Lubbock, as Independent Executor, and rendered that Robert A. Biggs and the First National Bank of Lubbock, as Independent Executor of the Estate of Claribel Lee Biggs are the legal and equitable owners of all of Section 19, Block A–24, Public School Lands, Gaines County, Texas, with each of said parties owning an undivided one-half interest in said property. The judgment is in all other respects affirmed. Finding good cause, we assess costs of appeal equally between the two parties.